# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3624

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Larry Davis, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 17, 2001

Filed: August 15, 2001

_____

Before BOWMAN and BEAM, Circuit Judges, and KYLE,[1] District Judge.

_____

BEAM, Circuit Judge.

Appellant, Larry Davis, was convicted in district court[2] of attempted armed bank robbery (18 U.S.C. § 2113(a) and (d)), use of a firearm in a crime of violence (18

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

U.S.C. § 924(c)(1)) and being a felon in possession of a firearm (18 U.S.C. § 922(g)(1) and 924(a)(2)). Under a conviction for these crimes, the statutory maximum sentence is twenty-five years. However, appellant was sentenced to life in prison as a repeat offender pursuant to 18 U.S.C. § 3559. Appellant challenges his sentence and conviction on several grounds. We affirm.

## I.    BACKGROUND

We review the facts in the light most favorable to the jury verdict. United States v. Davis, 103 F.3d 660, 664 (8th Cir. 1996).

On February 19, 1999, appellant entered a branch of Regions Bank in Little Rock, Arkansas, with a gun and demanded money from a teller. The bank guard grabbed appellant's gun and a brief struggle ensued, during which the gun apparently opened and bullets fell on the floor. After regaining control of the gun, the appellant pointed it at the guard and dry fired it (the chamber now being empty). With his plans foiled, the appellant left the bank.

Immediately before the robbery attempt, a would-be customer had driven up to the bank but decided not to go in because he saw the appellant enter the bank in a suspicious manner (i.e., wearing a hooded sweatshirt with the hood pulled tight around his forehead and chin concealing his face). Shortly thereafter, the customer saw the appellant exit the bank with a gun and attempt his getaway on foot. The customer immediately called 911 and began following the appellant in his car. The customer followed the appellant for several blocks, constantly relaying his location to authorities. There were no other pedestrians on the street. During this low-speed chase, the caller observed the appellant remove his sweatshirt, bundle it with other clothes, and discard it in a ditch. The caller lost sight of the appellant for a few seconds several times as he rounded corners, and perhaps for up to fifteen seconds when the appellant finally stopped and the caller had to drive past in order to avoid suspicion. Immediately after

passing the suspect and turning the corner, the caller encountered the police and directed them to the appellant. He then turned around and went to where the police had apprehended the appellant.

The caller confirmed–based on clothing, general physical build, and physical location–that the police had apprehended the person he had been following. The caller freely admitted to the police, and before the jury at trial, that he never got a good look at the face of the person whom he followed from the bank and that he could not make an identification based on facial features at the scene or later when presented with a photo line-up. Rather, he based his identification of the appellant on the fact that he followed the appellant from the bank to the point where the police apprehended him while keeping nearly constant visual contact on otherwise empty streets in broad daylight. The caller also admitted under cross-examination that although there were no other pedestrians on the street, it was conceivable that when he briefly lost sight of the suspect the suspect could have hidden, and that another person of the same general build, wearing similar clothes could have been walking in the place where the caller expected to find the suspect, however unlikely that scenario might be.

A jury convicted the appellant on all counts. Because appellant had two prior robbery convictions, he received a mandatory life sentence under 18 U.S.C. § 3559.

## II.    ANALYSIS

Appellant's conviction under 18 U.S.C. § 2113 for attempted robbery carries a statutory maximum of twenty-five years. However, appellant received a life sentence according to the provisions of 18 U.S.C. § 3559, which requires a mandatory life sentence if a person is convicted of a serious violent felony–such as robbery–after having previously been convicted of two or more serious violent felonies. 18 U.S.C. § 3559(c). Under that statute, once the prosecution establishes that a defendant has previously been convicted of two or more violent felonies, the burden shifts to the

defendant to prove the convictions were nonqualifying felonies, which cannot serve as a basis for imposing the mandatory life sentence. 18 U.S.C. § 3559(c)(3). To establish a robbery conviction as nonqualifying, a defendant must prove that no dangerous weapon, or threat of a dangerous weapon, was involved in the offense, and the offense did not result in death or serious injury. 18 U.S.C. § 3559(c)(3)(A).

Appellant makes two due process arguments to challenge his sentence: (1) due process demands that the question of whether his past robbery convictions are qualifying or nonqualifying felonies under section 3559 must be submitted to the jury to be proved beyond a reasonable doubt; and (2) even if the issue need not be submitted to the jury, due process prohibits shifting the burden of proof to a defendant to prove his prior convictions are nonqualifying. We reject both claims.

The Supreme Court has held it is not necessary to submit the fact of a prior conviction to the jury as an element of the crime to be proved beyond a reasonable doubt. Almendarez-Torres v. United States, 523 U.S. 224, 235, 247 (1998) (refusing to interpret a statute to make the fact of a previous conviction an element, and thus a fact question for the jury, in part because the introduction of evidence of a defendant's prior crimes risks significant prejudice to the defendant); see also Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (stating that any fact, *other than the fact of a prior conviction*, that increases a defendant's sentence beyond the statutory maximum authorized by the jury verdict must be submitted to the jury and proved beyond a reasonable doubt). Under this rule, a fact of prior conviction includes not only the fact that a prior conviction exists, but also a determination of whether a conviction is one of the enumerated types qualifying for the sentence enhancement under section 3559. See, e.g., United States v. Gatewood, 230 F.3d 186, 192 (6th Cir. 2000) (en banc).

Although in Apprendi the Court noted that it was "arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested," it explicitly refused to overrule that

decision because the question of prior convictions was not before the Court. 530 U.S. at 489-90. A close examination of Supreme Court cases casts further doubt on the future viability of Almendarez-Torres.  See Apprendi, 530 U.S. at 520-21 (Thomas, J., concurring) (noting that the fact of prior conviction is an element of the offense under a recidivism statute, contrary to the rule stated in Almendarez-Torres); Almendarez-Torres, 523 U.S. at 248 (Scalia, J., with whom Stevens, Souter and Ginsburg, JJ., joined dissenting) (stating that the issue of recidivism should be treated as an element of the offense); see also Gatewood, 230 F.3d at 192 (en banc) (questioning the viability of Almendarez-Torres).  It is our role to apply Supreme Court precedent as it stands, and not as it may develop.  Under Apprendi and Alemndarez-Torres, it was proper for the district court to make the finding according to a preponderance of the evidence that appellant had two prior convictions for serious violent felonies.

This still leaves the question of the burden shifting contained in section 3559. The structure of section 3559, which classifies all robberies as serious violent felonies but allows a defendant to prove the prior robbery convictions are nonqualifying by proving certain facts, creates an affirmative defense to the sentence enhancement.  See Gatewood, 230 F.3d at 188; United States v. Kaluna, 192 F.3d 1188, 1195 (9th Cir. 1999) (en banc).  Although due process places some limits on how the state defines the elements of a crime and distributes the burden of proof, it does not require the state to "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." Patterson v. New York, 432 U.S. 197, 207 (1977).  Other circuits that have considered the propriety of this burden-shifting provision in section 3559 have all held that under Patterson, Congress has the power to place on a defendant the burden of establishing an affirmative defense that is not an essential element of the crime.  Gatewood, 230 F.3d at 189; United States v. Ferguson, 211 F.3d 878, 887 (5th Cir. 2000); United States v. Smith, 208 F.3d 1187, 1190 (10th Cir. 2000); Kaluna, 192 F.3d at 1195; United States v. Wicks, 132 F.3d

383, 389 (7th Cir. 1997). We agree with the reasoning of these circuits and see no reason to repeat it here.[3]

Appellant next argues that the district court erred in excluding the testimony of an expert witness who would have offered opinions about the limited reliability of eyewitness testimony. We only reverse the decision to exclude expert testimony for abuse of discretion. United States v. Kime, 99 F.3d 870, 883 (8th Cir. 1996). We are "especially hesitant to find an abuse of discretion unless the government's case against the defendant rested exclusively on uncorroborated eyewitness testimony." United States v. Blade, 811 F.2d 461, 465 (8th Cir. 1987).

Here, the expert testimony generally would have concerned the psychological processes of encoding and recalling a memory, and how such processes affect a witness' accuracy when he observes an unfamiliar person and later attempts to pick that same person out of a line-up or group of photographs. This is not relevant to the testimony of the 911 caller. The caller's identification of the appellant at the time of arrest did not rely on attempting to recall an unfamiliar face, but rather it relied on the almost constant observation of the appellant on empty streets from the bank to the point of arrest. Excluding the expert testimony in relation to the 911 caller was not an abuse of discretion. Even if the court erred by excluding the expert testimony regarding the bank guard's identification of the appellant in a photo line-up, such error was harmless in light of the overwhelming independent evidence linking the appellant to the crime. United States v. Marrowbone, 211 F.3d 452, 455 (8th Cir. 2000) (stating that if, after reviewing the record, we determine that an erroneous evidentiary ruling did not influence the jury verdict, then such a ruling did not affect a substantial right of the defendant and is harmless error).

---

[3]Of course, the analysis concerning the burden-shifting would change considerably if the fact of prior conviction were viewed as an element of the crime rather than a sentencing enhancement.

Appellant also argues that the government violated the Speedy Trial Act, that the government presented insufficient evidence at trial to prove the bank was FDIC insured (and thus covered by the federal bank robbery statute), and that the trial court committed clear error in denying his motion for mistrial because the testimony of two government witnesses concerning appellant's clothes was improperly given before the jury (although the error was immediately cured when the district court struck the testimony from the record and instructed the jury to disregard it). Appellant has also argued, in a pro se brief, that the federal courts lack jurisdiction over his criminal prosecution. We have reviewed all of these claims and find them to be without merit.

## III. CONCLUSION

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.