# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3649

_____

United States of America,            \*

                                    \*

              Appellee,       \*

                                    \*   Appeal from the United States

                                    \*   District Court for the

    v.                         \*   Northern District of Iowa.

                                    \*

Lorenzo Williams,            \*

                                    \*

              Appellant.      \*

_____

Submitted: June 11, 2002

Filed: October 8, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY and MURPHY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Lorenzo Williams was tried by jury and convicted of Interference with Commerce by Violence in violation of the Hobbs Act, codified at 18 U.S.C. § 1951(a) (2000). He was sentenced to life imprisonment as a "three-strikes" offender, pursuant to 18 U.S.C. § 3559(c) (2000). Williams appeals, asserting 1) that the district court[1] erred in admitting prior bad acts evidence and in instructing the jury on the interstate

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Northern District of Iowa.

commerce element of the offense; 2) that there was insufficient evidence to prove the interstate commerce element; and 3) that the sentencing court violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) in its application of the three-strikes enhancement under 18 U.S.C. § 3559(c). We affirm.

I.    Background

Shortly after midnight on September 14, 2000, Cedar Rapids taxi cab driver Dan Morgan picked up defendant Lorenzo Williams. According to Morgan, Williams directed him to pull into the back of the parking lot. Once there, Williams pulled out a knife, held it to Morgan's throat, and demanded money. Morgan gave him his empty wallet and the cab fares he had earned that night. Williams then ordered Morgan to drive to an area of Cedar Rapids known for drug trafficking. The incident ended abruptly when Williams ripped the hand-held microphone from the cab radio and fled from the cab, taking the stolen wallet and cab fares with him. Two days later, Morgan's wallet was found in the same neighborhood where Williams had jumped out of the cab.

On September 28, 2000, Williams was indicted on one charge of Interference with Commerce by Violence, in violation of the Hobbs Act.[2] On February 5, 2001, the government filed an information, giving notice of Williams's prior robbery convictions and qualifying him for a sentence enhancement under the federal three-strikes law.[3]

---

[2] The Hobbs Act provides that "whoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires to do so . . . shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1951(a).

[3] 18 U.S.C. § 3559(c)(1)(A)(i) mandates a term of life imprisonment where "the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of 2 or more serious

At trial, Morgan testified as the only corroborating witness to the events. Defense counsel tried to impeach his credibility by suggesting that the events between Morgan and Williams were a drug deal gone bad. In response, the government introduced evidence of Williams's convictions for other cab robberies, summarized as follows: The first robbery occurred in June 1980 when he stole $30 from a cab driver in Cedar Rapids, was sentenced in October 1980, and was discharged on parole in October 1984. In September 1987, Williams used a knife to rob a cab driver in Cedar Rapids and stole about $100. In December 1987, Williams again used a knife to rob a cab driver and stole $34. He ripped the microphone from the cab radio during this robbery. In March 1988, Williams was sentenced for both of these robberies and was released from prison when his sentence expired on January 22, 1993.

In February 1993, just over a month after he was released from prison, Williams again robbed a cab driver in Cedar Rapids. He used a knife to commit the crime and stole $61. Less than a month later, in March 1993, he used a knife to rob another cab driver in Cedar Rapids. In June 1993, Williams was sentenced for both these robberies. He was released from custody via expiration of his sentence on June 10, 2000. Williams's crime at issue here took place three months after his release from custody.

To support its theory that Williams's crime affected interstate commerce, the government introduced evidence that we have summarized here: Morgan's cab bore the logo of "Century Cab Company." Independent cab owners pay a fee to use the Century Cab name and dispatch service. The cab Morgan was driving at the time of the robbery was owned by Robert Snyder. Morgan was engaged in a commercial enterprise of providing transportation services for hire, and Snyder was involved in a commercial enterprise because of his interest in the proceeds from the cab trips and

violent felonies."

was responsible for expenses of the enterprise. Most of the cab fare revenue was used to buy gasoline, which moved through interstate commerce. Snyder purchased insurance for the cab from an out-of-state company. Morgan and Snyder frequently transported Federal Express employees, railroad crew members, and packages that were moving in interstate commerce. Morgan also regularly transported passengers to and from the Eastern Iowa Airport. The robbery forced the cab to be shut down during the time when lucrative trips to the airport were likely to occur.

The jury returned a verdict finding Williams guilty of interfering with commerce by violence. Because Williams had five prior convictions for robbing cab drivers, he was sentenced to life in prison under 18 U.S.C. § 3559(c).

II.     Discussion

A.     404(b) Evidence

Williams first argues that the district court erred in admitting evidence of his prior criminal acts. Federal Rule of Evidence 404(b) provides that evidence of a defendant's prior crimes is not admissible to prove character. However, evidence of prior crimes may be introduced for other limited purposes.[4] This court has set a four-part test for determining the admissibility of Rule 404(b) evidence. The evidence must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice does not substantially outweigh its probative value. United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000). A district court's ruling on 404(b) will be reversed "only when such evidence clearly had no bearing on the case and was

---

[4]Evidence of other crimes may be admissible to show: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Howard, 235 F.3d 366, 372 (8th Cir. 2000) (quoting United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998)).

The district court did not abuse its discretion in admitting evidence of the prior cab robberies that Williams committed in Southeast Cedar Rapids. The evidence was used to prove identity, intent, and method of operating, not to show evidence of Williams's bad character. The government successfully demonstrated that his prior crimes were similar in kind and not overly remote in time to the charged crime: he robbed cab drivers with the aid of a knife six times in twenty years, sixteen of which were spent in custody. These convictions were well supported by evidence, and any potential prejudice created by the evidence did not substantially outweigh its probative value. We affirm the district court's admission of the 404(b) evidence.

B.      Interstate Commerce Jury Instruction

Williams next contends that the district court erred in instructing the jury that to find the Hobbs Act applicable, the effect of Williams's crime on interstate commerce need only be "probable or potential," not actual. We review a district court's jury instructions for an abuse of discretion. United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001). The instructions are examined as a whole to determine whether they "fairly and adequately submitted the issues to the jury." United States v. Wright, 246 F.3d 1123, 1128 (8th Cir. 2001).

The jury received Instruction 12, a follow up instruction on the affected commerce element. It stated:

> With regard to whether the defendant's actions affected interstate commerce in some way or degree, the government is required to prove only a minimal effect on interstate commerce. Moreover, the effect on

interstate commerce <u>may be merely probable or potential, not an actual effect</u>.  The government need not prove that the defendant intended or anticipated that there would be an effect on commerce.

(emphasis added).   While this instruction mirrors Eighth Circuit model jury instructions, it is nevertheless inconsistent with the Hobbs Act, which suggests that there must be evidence of an actual rather than potential effect on interstate commerce: "[w]hoever in any way or degree <u>obstructs, delays, or affects</u> commerce or the movement of any article or commodity in commerce by robbery or extortion or attempts or conspires to do so . . . shall be fined" (emphasis added).  18 U.S.C. § 1951(a).

In <u>United States v. Evans</u>, 272 F.3d 1069 (8th Cir. 2001), we invalidated one of the model jury instructions on a Hobbs Act money laundering charge because the instruction allowed the jury to convict the defendant even if it determined the money laundering transaction did not affect interstate commerce.  <u>See</u> <u>id.</u> at 1081.  That instruction read in relevant part: "It is not necessary for the government to show that . . . Commerce was actually affected.  All that is necessary is that the natural and probable consequences of a defendant's actions would be to affect interstate commerce."  <u>Id.</u>  That court explained that the faulty instruction was "reasonably likely to have understated the government's burden of proof.  There is no doubt that the model instruction is incorrect.  An effect on interstate commerce is an essential element of the offense."  <u>Id</u>.

In Williams's case, the statute's plain language requires an actual effect on interstate commerce, not just a probable or potential impact.  We therefore conclude that the jury instruction was an incorrect statement of the law.

A jury instruction that omits a single element of the offense is subject to harmless error review. Id. (Citing Neder v. United States, 527 U.S. 1, 8-9 (1999)). Although the model instruction given by the district court in this case was incorrect, it does not amount to reversible error because the uncontroverted evidence before the jury demonstrated that there were several "actual effects," summarized above. The cab owner's insurance payment came from across state lines, and the replacement part had to be ordered from out of state. The lost opportunities to carry customers and packages that might be traveling or carried interstate, regular aspects of the cab business, were also actual effects of the robbery. We hold that the erroneous jury instruction was harmless error because the substantial weight of the evidence supports the conclusion that there was an effect on interstate commerce. See Evans, 272 F.3d at 1081-82 (citing United States v. Owens, 167 F.3d 739, 755 (1st Cir. 1999); United States v. Allen, 129 F.3d 1159, 1164 (10th Cir. 1997). We affirm the district court on this matter.

C.    Sufficiency of the Evidence

Williams next asserts there is insufficient evidence of a connection between the robbery and interstate commerce to trigger a violation of the Hobbs Act. He argues that because Morgan and Snyder are independent contractors, they operate more as individuals than as a business. Our court has stated that "actions normally have a lesser effect on interstate commerce when directed at individuals rather than businesses." United States v. Quigley, 53 F. 3d 909, 910 (8th Cir. 1995) (citations omitted). That case dealt with two individuals who were robbed while walking to the store to pick up a purchase. That court concluded that the robbery had no effect on interstate commerce because they were store patrons not engaged in business.

The government need only prove a minimal effect on commerce. See United States v. Rabbitt, 583 F.2d 1014, 1023 (8th Cir. 1978) ("The plain language of the Hobbs Act proscribes [conduct] which 'in any way or degree obstructs, delays, or

affects commerce. . . . The connection with interstate commerce need only be slight.'") (quoting <u>Stirone v. United States</u>, 361 U.S. 212, 215 (1960)). In <u>United States v. Farmer</u>, 73 F.3d 836, 843 (8th Cir.1996), the court explained:

> We have no doubt that Congress, when it passed the Hobbs Act, had in mind primarily offenses with a broad impact on interstate commerce, as opposed to local robberies normally prosecuted under state law. The important point, though, is not what motivated Congress to pass the Hobbs Act, but what the Hobbs Act says. Its words in no way exclude prosecutions for single local robberies, so long as they satisfy the requirement that commerce or the movement of any article or commodity in commerce is obstructed, delayed, or affected, always understanding that by "commerce," in this context is meant "interstate commerce."

In <u>Farmer</u>, the defendant was convicted under the Hobbs Act for attempting to rob a Hy-Vee store in Waterloo, Iowa. Our court held that the interstate commerce element was satisfied because Hy-Vee sold products that come from other states and Hy-Vee itself has stores in seven states.

Williams attempts to argue that the isolated robbery of an independent cab driver was a crime directed at an individual rather than a business, and there was no actual nexus with interstate commerce. We disagree: the cab transported to the airport people and packages that were going to travel in interstate commerce; the cab occasionally crossed state lines as a part of its business; and the insurance money covering damage to the cab and the repair parts for the radio came from out-of-state. Furthermore, Morgan was engaged in business by driving the cab for profit. For these reasons, Williams's cab robbery necessarily had an effect on interstate commerce. We therefore affirm the district court on this matter.

-8-

D.     The Application of the Three-Strikes Enhancement

Williams's final argument has two parts.  First, Williams argues that under Apprendi v. New Jersey, 530 U.S. 466 (2000), the government must allege the prior felonies in the indictment and prove to a jury beyond a reasonable doubt that he had prior convictions for serious felonies before the three strikes enhancement can be applied.  Second, he argues that the application of the three-strikes enhancement at sentencing further denied him due process by placing the burden on him to prove by clear and convincing evidence that the prior convictions were not serious violent felonies.

18 U.S.C. § 3559(c) requires that a life sentence be imposed upon a defendant who is convicted of a serious crime of violence and who has two or more serious violent felony convictions.  There is an affirmative defense to application of the statute if the defendant can show by clear and convincing evidence that no firearm or other dangerous weapon was used or threatened to be used in committing a prior robbery.  18 U.S.C. § 3559(c)(3)(A).  Prior felonies need not be identified in the indictment, but are to be filed in an information, as they were here.  United States v. Davis, 260 F.3d 965, 968-70 (8th Cir. 2001), is controlling.[5]  Davis held that under Apprendi and Almendarez-Torres v. United States, 523 U.S. 224 (1998), it is "proper for the district court to make the finding according to a preponderance of the evidence that appellant had two prior convictions for serious violent felonies." Id. at 969. We therefore reject Williams's argument that the government must prove beyond a reasonable doubt that he had been convicted of prior serious felonies.

_____

[5]Williams concedes that these claims are controlled by Davis and Almendarez-Torres and asserts these claims to preserve them for possible appeal to the Supreme Court.

With regard to his second argument regarding the burden-shifting provision in § 3559, Davis holds that under Patterson v. New York, 432 U.S. 197 (1977), "Congress has the power to place on a defendant the burden of establishing an affirmative defense that is not an essential element of the crime." Davis, 260 F.3d at 970 (citations omitted). Bound by Davis, we affirm on this point.

IV. Conclusion

The district court erred in giving a jury instruction that did not require the jury to find an "actual effect" on commerce. However, this was harmless error because the evidence demonstrated an actual effect on commerce, and this evidence was unrefuted. On all the other issues Williams raises, the district court did not err. Therefore, we affirm Williams's conviction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.