# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2196

_____

United States of America

*Plaintiff - Appellee*

v.

Javaar Yavonnie Kalem Watkins, also known as Javaar Yavonnie Watkins, also
known as Javaar Ya'onnie-K Watkins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: February 15, 2023
Filed: May 9, 2023

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Javaar Yavonnie Kalem Watkins of possessing firearms and
ammunition as an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1),
924(a)(2), and 924(e). The district court[1] sentenced him to 324 months in prison.

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the
District of North Dakota.

He appeals his conviction. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In September 2020, Watkins and his brother went to a bar in Bismarck, North Dakota. Jakim Jackson, Kendrick Jackson, and Alvin Blackmon were also there. After the bar closed, Watkins, his brother, and Blackmon had an altercation in the parking lot. Taking a 9 mm pistol from his truck, Blackmon fired three to four shots in the air. Jakim picked up a cell phone lying on the ground. He, Kendrick, and Blackmon left in Blackmon's truck. The phone rang. Jakim answered. The caller told Jakim he was tracking the phone and wanted it back.

Blackmon gave Jakim his 9 mm pistol and then dropped him and Kendrick off a few blocks from their apartment. When they arrived at their building, Kendrick sat on the porch outside. Jakim went inside to their basement-level apartment. Later that night, Watkins and his brother arrived at the apartment building. They pointed guns at Kendrick and asked "where he is." Believing they were asking about Jakim, Kendrick went into the apartment. Watkins and his brother followed. Watkins pointed a gun at Kendrick's head. Jakim came out of his bedroom. Watkins shot at him. Jakim grabbed the 9 mm pistol. He and Watkins exchanged gunfire. Jakim was shot multiple times. Kendrick fled. Watkins took the 9 mm pistol and left. Investigators found shell casings from two different firearms—a 9 mm pistol and .45-caliber handgun.

Five days later, investigators showed Jakim a photo array of suspects that did not include pictures of Watkins or his brother. Jakim identified one person but wasn't "even 50 percent sure on that." At a second interview less than a week later, investigators showed Jakim two photo arrays, one with Watkins' picture and one with his brother's picture. Jakim positively identified both Watkins and his brother, with 100% certainty. As to Watkins, he said, "That's the mother-fucker right there." Kendrick separately identified them with 100% certainty.

The identifications led to a trailer in Bismarck. Law enforcement surveilled it. They saw Watkins and his brother arrive and enter. Watkins left soon after. Officers followed him and apprehended him. His brother left the trailer later and surrendered. The brother's girlfriend wanted to speak with the officers. They talked on the porch of the trailer. A child stuck his head out a window of the trailer and said, "My daddy has a gun too." Because it was cold outside and the girlfriend wanted to make a phone call, officers entered the trailer. A child said, "My daddy has a gun in there," and "My daddy has a gun in the closet." They asked the brother's girlfriend for consent to search the trailer. She refused. They obtained a search warrant. They found two loaded firearms—a 9 mm pistol and a .45-caliber handgun—in a closet in a bedroom with Watkins' driver's license. The handgun was wrapped in a t-shirt from the restaurant where Watkins and his brother worked. A DNA analysis showed Watkins was the main contributor of DNA on the handgun. DNA analysis was inconclusive on the pistol. The brand and caliber of the ammunition from both the pistol and the handgun was the same as the shell casings found at the apartment.

Prosecutors charged Watkins and his brother with possession of a firearm by a prohibited person. The district court denied Watkins' motion to suppress the evidence from the trailer. It also denied his motions to suppress the eyewitness identifications, to allow an expert witness on the reliability of eyewitness identification, and to sever his trial from his brother. The jury convicted Watkins but acquitted his brother. He appeals.

I.

Watkins argues the district court erred in denying his motion to suppress evidence because the search warrant was "authorized on uncorroborated statements" of a child and lacked probable cause. This court need not decide this issue because the district court correctly found that even without probable cause, the good faith exception applied. *See **United States v. Leon**, 468 U.S. 897, 925 (1984) (allowing courts to "reject suppression motions posing no important Fourth Amendment

questions by turning immediately to a consideration of the officers' good faith"); *United States v. Randle*, 39 F.4th 533, 536 (8th Cir. 2022) ("We will assume without deciding that the warrant affidavit lacked a sufficient showing of nexus and turn to consideration of the officers' good faith.").

The good faith exception applies unless "a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *Randle*, 39 F.4th at 536 (cleaned up). "Under *Leon*, evidence obtained from a search performed under a warrant is suppressed only if (1) the affiant misled the issuing judge with a knowing or reckless false statement; (2) the issuing judge wholly abandoned her judicial role; (3) the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officer could not reasonably presume its validity." *United States v. Hay*, 46 F.4th 746, 751 (8th Cir. 2022) (cleaned up).

On appeal, Watkins does not challenge the district court's good-faith conclusion. This argument is waived. *See United States v. Azure*, 539 F.3d 904, 912 (8th Cir. 2008) (holding that "appellants must raise their issues on appeal in their opening briefs"). Even if it were not, the record does not indicate that any of the *Leon* exceptions applies here. The district court did not err in determining the good-faith exception applied.

II.

Watkins contends the district court erred in denying his motion to suppress the eyewitness identification because it was "based on the impermissibly suggestive photo array line-up and likelihood of misidentification." This court reviews de novo. *United States v. Gilbert*, 721 F.3d 1000, 1006 (8th Cir. 2013). Considering the admissibility of a photo lineup identification, this court examines (1) "whether the identification procedure is impermissibly suggestive," *and* (2) "whether under the

-4-

totality of the circumstances the suggestive procedure creates a very substantial likelihood of irreparable misidentification." *Id.*

Even if the line-up were impermissibly suggestive as Watkins contends, it was sufficiently reliable (i.e., there was not a substantial likelihood of irreparable misidentification). In assessing sufficient reliability, this court considers "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *United States v. Williams*, 340 F.3d 563, 567 (8th Cir. 2003).

Balancing these factors, there was "very little likelihood of misidentification." *Id*. As the district court found, the two eyewitnesses interacted with Watkins both at the shooting *and* at the bar before the shooting, giving them "ample opportunity" to see him. The eyewitnesses also consistently identified Watkins' physical characteristics, including his lighter skin tone and the tattoo on his neck. Finally, the eyewitnesses expressed 100% certainty about their identifications.

Watkins also suggests the district court's failure to hold a hearing on his motion to suppress the identification is a constitutional violation. But a pretrial hearing on the admissibly of identification evidence is not "constitutionally necessary." *United States v. Daily*, 488 F.3d 796, 802 (8th Cir. 2007). Where a defendant has sufficient notice of pretrial identification evidence and the opportunity to cross-examine identification witnesses, there are no "exceptional circumstances" warranting a "constitutionally mandated pretrial hearing." *Id*. at 803. Watkins does not argue lack of notice or ability to cross-examine the eyewitnesses. The district court did not err in declining to hold a hearing on the motion to suppress.

III.

Watkins asserts the district court erred in rejecting his request to present expert testimony on eyewitness identification. This court reviews the exclusion of expert

testimony for abuse of discretion.  *See United States v. Davis*, 260 F.3d 965, 970 (8th Cir. 2001).  "Criminal defendants have a fundamental right to present the testimony of witnesses in their defense."  *United States v. Strong*, 826 F.3d 1109, 1115 (8th Cir. 2016).  "However, there is no absolute right for criminal defendants to call every witness."  *Id*.  "A defendant's right to present witness testimony is limited by 'other legitimate interests in the criminal trial process.'"  *Id*., *quoting United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "In the case of all expert testimony the district court serves as a gatekeeper to ensure that only reliable and relevant expert testimony is presented to a jury."  *United States v. Legs*, 28 F.4th 931, 935 (8th Cir. 2022).  Even if expert testimony meets the requirements of Federal Rule of Evidence 702, the district court may exclude it if "its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *Strong*, 826 F.3d at 1115 (cleaned up), *quoting* **Fed. R. Evid. 403**.  When a layperson juror "would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous."  *United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996).

Here, the district court analyzed the admission of the proposed testimony:

> In *Perry v. New Hampshire*, the Supreme Court stated the use of "expert testimony on the hazards of eyewitness identification evidence" may be admitted in appropriate cases, specifically noting it is appropriate to admit expert testimony in cases involving eyewitness identification of strangers.  565 U.S. at 247.  However, as the charges in this case relate to the possession of firearms and ammunition, this is simply not one of those cases in which expert testimony regarding eyewitness identifications is appropriate.  The Court is mindful that in any number of cases, expert testimony regarding eyewitness identifications could be useful to the jury in deciding factual issues, particularly when the identity of the defendant is an element of the offense charged or when the eyewitness identification is uncorroborated.  However, this is simply not one of those cases.  Moreover, the Court has significant concerns that any probative value of Professor Kehn testimony is outweighed by the danger of it

-6-

misleading the jury in this case.  See Fed. R. Evid. 403.  Again, the Court emphasizes, this is not a case of mistaken identity or where the only evidence against the Defendant is uncorroborated eyewitness identifications, but instead the Defendants are charged with being felons or prohibited persons in possession of firearms or ammunition. Accordingly, the Court finds Rule 702 of the Federal Rules of Evidence is not satisfied and concludes testimony from Professor Kehn is not admissible at trial.

As the district court noted, the government presented significant evidence, in addition to the eyewitness testimony, that Watkins possessed the firearms:  they were found in a bedroom where he stayed (immediately after he left the residence); one had his DNA on it; and the other was wrapped in a shirt from his business.  The government's case did not solely rely on, or even require, the eyewitness testimony. *See United States v. Nickelous*, 916 F.3d 721, 724-25 (8th Cir. 2019) (holding the district court did not abuse its discretion in excluding expert testimony on eyewitness identification in part "because the conviction did not rest solely" on the eyewitness testimony); *Kime*, 99 F.3d at 885 ("We are especially hesitant to find an abuse of discretion in denying expert eyewitness identification testimony unless the government's case against the defendant rested exclusively on uncorroborated eyewitness testimony." (cleaned up)).  And the court gave a "comprehensive instruction regarding the evaluation and reliability of eyewitness testimony." *Kime*, 99 F.3d at 885.  There was no abuse of discretion.

IV.

Watkins believes the court deprived him of a fair trial by "denying multiple requests to sever" the trial with his co-defendant "despite antagonistic defenses." This court reviews the denial of a motion to sever for abuse of discretion. *See United States v. Hawkins*, 796 F.3d 843, 861 (8th Cir. 2015).  "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  Indeed, joint trials "play a vital role in the criminal justice system." *Id*.  Severance is not required merely because codefendants present conflicting defenses. *Id*. at 538.  District courts should grant a severance

"only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. Reversal of a denial of a motion to sever is not appropriate unless the denial resulted in "real and clear prejudice." *Hawkins*, 796 F.3d at 861. Clear prejudice exists if: (1) a defendant's defense is irreconcilable with a codefendant's defense and the jury will infer this conflict demonstrates guilt; or (2) the jury will not be able to compartmentalize evidence about separate defendants. *See United States v. Martin*, 777 F.3d 984, 994 (8th Cir. 2015). "The defendant carries a heavy burden to make either showing." *Id*.

Watkins claims irreconcilable defenses: his defense relies on mistaken identity (he claims he was not at the apartment at the time of the shooting), while his brother claims both he and Watkins were at the shooting, but he did not possess a gun or shoot anyone. Watkins' argument is flawed. First, his claim of mistaken identity was not a defense to the crime charged. He was charged with unlawfully possessing a firearm and ammunition, not shooting or assaulting someone. The jury was not required to decide whether Watkins shot someone or was even present at the shooting. It could have convicted him for possession whether it believed he was present at the shooting or not. Second, the core of his brother's defense was simply that the brother did not possess or shoot the gun. *See Hawkins*, 796 F.3d at 861 ("A defense is irreconcilable when the jury, to believe the core of one defense, must necessarily disbelieve the core of another."). The jury could have believed that both brothers were present at the shooting or neither was and still convicted Watkins. Third, as discussed, the government presented sufficient evidence, absent the eyewitness identification, to prove his possession charge. *See Martin*, 777 F.3d at 994 (holding that even if defenses were mutually antagonistic and irreconcilable, severance was not appropriate because the government offered evidence "independent of the conflicting defenses"). Finally, the district court instructed the jury to consider each charge and the evidence pertaining to that charge separately. It told the jury that a finding of guilty or innocent as to one defendant should not control their verdict as to the other. *See Zafiro*, 506 U.S. at 540 (holding that a district court's jury instructions may cure any risk of prejudice from antagonistic

defenses); ***United States v. Mann***, 685 F.3d 714, 718 (8th Cir. 2012) ("The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions."). The district court did not abuse its discretion in declining to sever the trial.

V.

Watkins maintains the district court erred by rejecting his proposed instruction on eyewitness identification and "instructing the jury they could consider personal experiences when determining objective reasonable doubt." District courts have "broad discretion" in formulating jury instructions. ***United States v. White Horse***, 35 F.4th 1119, 1121 (8th Cir. 2022). This court will affirm instructions if "taken as a whole," they "fairly and adequately submitted the issues to the jury." ***Id***.

Watkins challenges part of the district court's "reasonable doubt" instruction: "Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person, after careful consideration, would not hesitate to rely and act upon that proof *in life's most important decisions*" (emphasis added). He also challenges the preliminary instruction that stated: "You are entitled to consider the evidence in light of your own observations and experiences in the affairs of life." He believes both of these instructions allow "the jury to make incorrect comparisons and input their own subjective level of proof to an otherwise objective standard."

Both these instructions are in the current edition of the Eighth Circuit Model Jury Instructions (Criminal), at §§ 1.01 and 3.11. Earlier versions of the reasonable doubt instruction did not contain the phrase, "in life's most important decisions." *See **United States v. Owens***, 966 F.3d 700, 705 (8th Cir. 2020). Adding the phrase, the Judicial Committee on Model Jury Instructions for the Eighth Circuit noted it was similar to instructions used in three other circuits. *See* **Eighth Circuit Manual of Model Jury Instructions (Criminal), § 3.11, Committee Comments** (2021), *citing* **Fifth Circuit Model Jury Instruction, § 1.05**; **Sixth Circuit Model Jury**

**Instructions, § 1.03**; **Eleventh Circuit Model Jury Instruction § 3 (Reasonable Doubt)**.

The Supreme Court and other courts of appeal have approved similar language in reasonable doubt instructions. *See **Holland v. United States***, 348 U.S. 121, 140 (1954) (holding the instruction "the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon" was not misleading and "correctly conveyed the concept of reasonable doubt to the jury"); ***United States v. Stewart***, 306 F.3d 295, 306-07 (6th Cir. 2002) (affirming jury instruction on reasonable doubt—"Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives"). This court has recognized that jurors can rely on their own observations and experiences in considering the evidence. ***United States v. Owens***, 966 F.3d 700, 709 (8th Cir. 2020) ("Rational jurors, using reason and common sense in light of their own observations and experiences, could infer beyond a reasonable doubt that a felony conviction would be a significant life event that a person would know about when it happened and remember at a later date."). Other parts of the reasonable doubt instruction included language that this court has approved. *See **Harris v. Bowersox***, 184 F.3d 744, 750-52 (8th Cir. 1999) (approving language that "Proof beyond a reasonable doubt is proof that leave you firmly convinced of the defendant's guilt"). Viewing the instruction as a whole, there was no error.

Watkins also argues the district court erred when it declined his proposed jury instruction on out-of-court identification that he took from the New Jersey Model Jury Instructions. This instruction was not based on federal law but rather on the due process protections under the New Jersey Constitution. *See **State v. Henderson***, 27 A.3d 872, 919 n.10 (N.J. 2011). Watkins was not entitled to this instruction as a matter of right. *See **United States v. Bull***, 8 F.4th 762, 769 (8th Cir. 2021) (holding "the district court is only obligated to instruct the jury on relevant law").

The district court gave two instructions on eyewitness testimony and out-of-court identification evidence. These instructions were based upon the Eighth Circuit Model Jury Instructions of Witness Credibility and Eyewitness Testimony. *See* **Eighth Circuit Manual of Model Jury Instructions (Criminal), §§ 3.04 and 4.08**. These instructions sufficiently and accurately submitted these issues to the jury. *See United States v. Grey Bear*, 883 F.2d 1382, 1387-88 (8th Cir. 1989) (upholding trial court's refusal to give an identification instruction where the instruction given adequately "pointed out the relevant considerations to be weighed in gauging eyewitness testimony"). The district court did not abuse its discretion in denying this instruction. *See United States v. Heard*, 951 F.3d 920, 926 (8th Cir. 2020) (holding that the refusal to give a specific eyewitness instruction was not prejudicial error where the case did not rest solely on eyewitness identification).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____