OPINION OF THE COURT
FISHER, Circuit Judge, joined by McKEE, Chief Judge, and SLOVITER, SCIRICA, RENDELL, AMBRO, FUENTES, SMITH, and JORDAN, Circuit Judges.
William Garrus (“Garrus”), a Pennsylvania state prisoner, seeks federal habeas relief under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (“AEDPA”). Garrus was found guilty in state court of voluntary manslaughter in 2001. At sentencing, the judge increased his sentence beyond the statutory maximum based on 42 Pa. Cons.Stat. § 9714, Pennsylvania’s “three strikes” law. In order to do so, the judge made a judicial finding that Garrus had previously been convicted of burglarizing an occupied building, when, in fact, he had only pled guilty to, and been convicted of, second degree burglary (which, under Pennsylvania law, necessarily requires that the burglarized building was unoccupied). In the habeas petition now before us, Garrus argues that this judicial factfinding violated the rule of Apprendi v. New Jersey, requiring that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The District Court denied the petition on the basis that the highest state court determination upholding Garrus’s sentence was not contrary to or an unreasonable application of clearly established Federal law.
Key to our determination is a single question: whether, pursuant to AEDPA, the state court unreasonably applied Apprendi by allowing Garrus to be sentenced beyond the statutory maximum based on a *397 judicial finding that Garrus burglarized an occupied building, despite his plea to the contrary.[1] For the reasons set forth below, we hold that the state court determination upholding Garrus’s sentence was objectively unreasonable, and that Garrus is entitled to habeas relief. Accordingly, we will reverse the order of the District Court.
I.
On February 10, 2000, Garrus was at the home of his girlfriend, Toi Bryant, with whom he has a daughter, when Bryant’s ex-boyfriend, Charles Goode, showed up at the residence. Shortly after Goode arrived, an argument ensued between him and Bryant involving their child. As the argument escalated, Garrus took his daughter upstairs. He later returned downstairs to the kitchen where Goode and Bryant were arguing. After Garrus and Goode exchanged some heated words, a fight broke out between the two men. Garrus picked up a kitchen knife and stabbed Goode several times in the chest area. Goode broke away from Garrus and ran upstairs to the bathroom. Garrus left the home. When police arrived, both Goode and Bryant identified Garrus as the attacker. Goode later died from his injuries.
Following a jury trial in the Philadelphia County Court of Common Pleas, Garrus was convicted on March 9, 2001, of voluntary manslaughter and possession of an instrument of crime. A conviction for voluntary manslaughter carries a maximum sentence of 20 years of imprisonment. 18 Pa. Cons.Stat. §§ 1103, 2503(c). However, the Commonwealth of Pennsylvania (the “Commonwealth”) notified the trial court that it would seek a sentencing enhancement under Pennsylvania’s “three strikes” law, which requires a judge to sentence a defendant to a minimum term of 25 years’ imprisonment (and a maximum of up to life imprisonment) if the defendant was previously convicted of two or more separate “crimes of violence.” 42 Pa. Cons.Stat. § 9714. “Crimes of violence” may include first degree burglary (defined as, inter alia, burglary of an occupied structure), but do not include second degree burglary (defined as, inter alia, burglary of an unoccupied structure).[2]
*398 On April 30, 2001, the trial court held the first of two sentencing hearings. The Commonwealth offered evidence that Garrus had three prior convictions for “crimes of violence:” (1) a January 1995 conviction for first-degree robbery; (2) a February 1995 conviction for first-degree robbery; and (3) a February 1997 plea and conviction for second-degree burglary. The Commonwealth argued that although Garrus had only pled guilty to second degree burglary in 1997, the trial court should consider a police report and witness statements regarding that burglary to find instead that the building Garrus had burglarized in 1997 was occupied. On the basis of the police report and witness statements, the trial court found at the second sentencing hearing on May 8, 2001, that Garrus’s prior 1997 conviction for second-degree burglary constituted a crime of violence under § 9714. Commonwealth v. Garrus, June Term 2000 No. 0092, slip op. at 17 (Phila.Cnty.Ct.Com.Pl. Jan. 16, 2002). Additionally, it found that the two 1995 robberies constituted two separate crimes of violence, and that his conviction for voluntary manslaughter was his fourth crime of violence. Id. The trial court sentenced Garrus to a term of 25 to 50 years’ imprisonment. Id.
Garrus appealed his conviction and sentence to the Superior Court of Pennsylvania.[3] He argued that, by definition, his 1997 second-degree burglary conviction did not constitute a “crime of violence” under Pennsylvania’s “three strikes” law. The Superior Court of Pennsylvania adopted the trial court’s opinion in its entirety. Commonwealth v. Garrus, No. 2592 EDA 2001, 815 A.2d 1125 (Pa.Super.Ct. Oct. 18, 2002). The Supreme Court of Pennsylvania granted Garrus’s petition seeking allocatur on the sole issue of Garrus’s sentence, Commonwealth v. Garrus, 572 Pa. 438, 817 A.2d 455 (2003), but later dismissed the appeal in September 2003 as having been improvidently granted. Commonwealth v. Garrus, 574 Pa. 655, 832 A.2d 1063 (2003).
In April 2004, Garrus filed a pro se petition for postconviction relief in the Philadelphia County Court of Common Pleas, pursuant to Pennsylvania’s Post Conviction Relief Act (“PCRA”), 42 Pa. Cons.Stat. § 9541 et seq., challenging his sentence. He argued that the trial court, at sentencing, violated his constitutional rights, as articulated in Apprendi, 530 U.S. at 476, 120 S.Ct. 2348, by relying on the police report and victim statement to determine that his 1997 burglary conviction was a “crime of violence” under Pennsylvania’s “three strikes” law. Garrus also asserted that state law required his two 1995 robbery convictions to be considered as one “crime of violence” under the “three strikes” law. As a result, Garrus claimed that he had, at most, one prior conviction for a “crime of violence,” rendering him ineligible for the 25-year mandatory minimum sentence he had received.
Garrus’s PCRA petition was dismissed in February 2005. A month later, the Supreme Court rendered a decision in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), in which the Court held that a sentencing court is not permitted to consider police reports in determining whether a prior conviction constituted a “violent crime” under the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924, a federal recidivism statute. Id. at 16, 26, 125 S.Ct. 1254.
On appeal from the denial of his PCRA petition, Garrus argued that the sentenc *399 ing court’s consideration of the police report and victim statement, with respect to his 1997 burglary conviction, violated his rights under Apprendi and Shepard, and he again argued that his two 1995 robbery convictions constituted one “crime of violence.” The Superior Court of Pennsylvania affirmed the denial of his PCRA petition. Commonwealth v. Garrus, No. 961 EDA 2005, 902 A.2d 976 (Pa.Super.Ct. Apr. 18, 2006). In its opinion, the Superi- or Court acknowledged that Apprendi requires that “any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.” Id. at 8-9 (quoting Apprendi 530 U.S. at 476, 120 S.Ct. 2348). However, it determined that the prior conviction exception permitted the sentencing judge to find that Garrus had burglarized an occupied building despite his plea to the contrary, and to sentence him beyond the statutory maximum accordingly. The Superior Court also determined that the Supreme Court’s decision in Shepard did not affect the validity of the prior conviction exception established in Apprendi. Finally, on the basis that the 1997 burglary constituted a “crime of violence,” the Superior Court declined to reach the issue of whether the two 1995 robberies constituted separate crimes. The Supreme Court of Pennsylvania denied Garrus’s petition seeking further appellate review. Commonwealth v. Garrus, 588 Pa. 776, 906 A.2d 539 (Pa. Aug. 29, 2006) (table).
On January 16, 2007, Garrus filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 2254. Garrus raised the same challenges to both his 1997 burglary conviction and the two 1995 robbery convictions. The Magistrate Judge denied Garrus’s petition, Garrus v. Mazurkiewicz, No. 07-187 (E.D.Pa. May 28, 2008), and concluded that it was precluded from granting federal habeas relief because the sentencing court’s consideration of the police report and victim statement in determining whether Garrus had two prior convictions for crimes of violence under Pennsylvania’s “three strikes” law was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Id. at 38-39.
The Magistrate Judge also concluded that Garrus’s argument that his two 1995 robbery convictions should be considered as one for purposes of the recidivism statute was therefore moot, as Garrus still had at least two prior convictions for crimes of violence — the 1997 burglary conviction and at least one of the 1995 robbery convictions. In any event, the Magistrate Judge reasoned, Garrus’s challenge to the 1995 robbery convictions involved an interpretation of state law and could not be considered by federal courts in a habeas petition.
Nevertheless, the Magistrate Judge recommended that the District Court issue a certificate of appealability to this Court, limited to the issue involving the 1997 burglary conviction. The District Court adopted the Magistrate Judge’s recommendation, with the exception that it rejected the Magistrate Judge’s determination that sufficient grounds existed to issue a certificate of appealability. Garrus v. Johnson, No. 07-187, 2009 WL 2595599 (E.D.Pa. Aug. 18, 2009). Garrus appealed, and on March 12, 2010, we granted a certificate of appealability to consider the issue of whether the state sentencing court violated Garrus’s constitutional rights by labeling the 1997 second-degree burglary conviction a “crime of violence” for purposes of applying Pennsylvania’s “three strikes” law.
*400 II.
The District Court had jurisdiction to consider Garrus’s habeas petition pursuant to 28 U.S.C. § 2254, as the claim raised in the petition has been properly-exhausted in the state courts. See Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir. 1994)[4] We have jurisdiction to review the District Court’s judgment pursuant to 28 U.S.C. §§ 1291 and 2253. We exercise de novo review over a District Court’s denial of habeas relief, Vega v. United States, 493 F.3d 310, 314 (3d Cir.2007), and apply the highly deferential AEDPA standard, which, in this case, precludes us from granting habeas relief unless the challenged state court decision was “contrary to, or involved an unreasonable application of, clearly established Federal law[.]” 28 U.S.C. § 2254(d)(1).
III.
Core to a criminal defendant’s constitutional rights is the principle that “criminal convictions [must] rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.” United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); see also In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In Apprendi, the Supreme Court held that this same right applies to a sentencing factor that would increase a defendant’s sentence beyond the statutory maximum because, like an element of a separate crime, such a sentencing factor results in a higher sentence than that which could be prescribed for the original crime. 530 U.S. at 476, 490, 120 S.Ct. 2348. Thus, there is no “principled basis” for treating such a sentencing factor differently than an element of a crime. Id. at 476, 120 S.Ct. 2348. The exception is that a judge can increase the sentence beyond the statutory maximum based on “the fact of a prior conviction” because a prior conviction has already been established through procedural safeguards. Id. at 488-90, 120 S.Ct. 2348; Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (“[A] prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.”).
These precepts are “rooted in longstanding common-law practicef.]” Cunningham v. California, 549 U.S. 270, 281, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). Apprendi recounted their historical context, noting that early on in our history, judges had “very little explicit discretion in sentencing.” 530 U.S. at 479, 120 S.Ct. 2348. Any “circumstances mandating a particular punishment” had to be charged to the jury in the indictment; there was “[no] distinction between an ‘element’ of a felony offense and a ‘sentencing factor[.]’ ” Id. at 478, 480, 120 S.Ct. 2348. In the 19th century, this idea began to shift, “from statutes providing fixed-term sentences to *401 those providing judges discretion within a permissible range[.]” Id. at 481, 120 S.Ct. 2348. Crucially, this shift “has been regularly accompanied by the qualification that [such judicial] discretion was bound by the range of sentencing options prescribed by the legislature.” Id.
By the late 20th century, the Supreme Court began to address state laws that increased a defendant’s punishment based on factors found at sentencing, rather than based on factors found at trial. In McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court, “for the first time, coined the term ‘sentencing factor’ to refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge.” Apprendi 530 U.S. at 485, 120 S.Ct. 2348 (construing McMillan). Consistent with longstanding constitutional principles, McMillan held that a “sentencing factor” must at times be found by a jury because “(1) constitutional limits exist to States’ authority to define away facts necessary to constitute a criminal offense, and (2) ... a state scheme that keeps from the jury facts that ‘expos[e] [defendants] to greater or additional punishment,’ may raise serious constitutional concern[s].” Apprendi 530 U.S. at 486, 120 S.Ct. 2348 (quoting McMillan, 477 U.S. at 85-88, 106 S.Ct. 2411) (internal citations omitted).
A decade later, the Supreme Court decided Almendarez-Torres v. United States, 523 U.S. 224, 242-47, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), a case in which the defendant was convicted for his presence in the United States after being deported, a violation which normally carried a maximum of two years’ imprisonment. 523 U.S. at 227, 118 S.Ct. 1219. Prior to his initial deportation, Almendarez-Torres was convicted of three aggravated felonies, and according to the sentencing statute, where the original deportation had occurred subsequent to an aggravated felony, the court could impose a maximum sentence of up to twenty years’ imprisonment. Id. at 227, 229, 118 S.Ct. 1219. Almendarez-Torres argued that he could not be subject to more than two years’ imprisonment, because his indictment had not mentioned his earlier aggravated felony convictions. Id. at 227, 118 S.Ct. 1219. Importantly, there was no contention that the defendant had not been convicted of the three aggravated felonies, but only that the fact of his prior convictions should have been included in the indictment and charged to the jury. Id. Thus, Almendarez-Torres had earlier been convicted of the facts necessary for the sentencing enhancement, “pursuant to proceedings with substantial procedural safeguards of their own[.]” Apprendi 530 U.S. at 488, 120 S.Ct. 2348. In other words, by judicially finding that Almendarez-Torres’s three prior convictions existed, the sentencing judge did not “change a pre-existing definition of a well-established crime, nor ... ‘evade’ the Constitution, either by ‘presuming’ guilt or ‘restructuring’ the elements of an offense.” Almendarez-Torres, 523 U.S. at 246, 118 S.Ct. 1219.
The Supreme Court found that the fact of Almendarez-Torres’s prior convictions did not have to be charged to the jury because the constitutional limitations articulated in McMillan did not apply.[5] Almendarez-Torres, 523 U.S. at 228, 242-43, 118 S.Ct. 1219. As the Supreme Court later explained in Apprendi: “[b]oth the cer *402 tainty that procedural safeguards attached to any ‘fact’ of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that ‘fact’ in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a ‘fact’ increasing punishment beyond the maximum of the statutory range.” 530 U.S. at 488, 120 S.Ct. 2348.
A year after Almendarez-Torres, the Supreme Court explained that Almendarez-Torres’s recidivism exception was permitted because “a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.” Jones, 526 U.S. at 249, 119 S.Ct. 1215. In Jones, the trial court gave the defendant a sentence beyond the statutory maximum based on a judicial finding that the carjacking offense he was convicted of involved “serious bodily injury.” Id. at 230-31, 119 S.Ct. 1215. The Supreme Court found that the carjacking statute required a jury, rather than a judge, to determine whether the crime involved “serious bodily injury,” citing “grave” constitutional questions that would arise if the statute were to be interpreted otherwise. Id. at 231, 239, 119 S.Ct. 1215. Although Jones did not actually reach the constitutional issue, its explanation of Almendarez-Torres and its constitutional discussion were significant, especially given that Apprendi explicitly “confirm[ed] the opinion ... expressed in Jones [,]” 530 U.S. at 490, 120 S.Ct. 2348, that “under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.” 530 U.S. at 476, 120 S.Ct. 2348 (quoting Jones, 526 U.S. at 243 n. 6, 119 S.Ct. 1215).
Against this historical backdrop, the Supreme Court decided Apprendi, where a defendant pled guilty to unlawful possession of a weapon, a second-degree offense punishable by up to ten years’ imprisonment. Despite the defendant’s plea and conviction for a second-degree offense, the trial court sentenced him to twelve years’ imprisonment, a “punishment identical to that ... provide[d] for crimes of the first degree,” based on a judicial finding pursuant to a New Jersey hate crime sentencing enhancement, “that the defendant’s ‘purpose’ for unlawfully possessing the weapon was ‘to intimidate’ his victim on the basis of a particular characteristic the victim possessed.” 530 U.S. at 468-69, 471, 491, 120 S.Ct. 2348. The Apprendi Court began by stating that “[a]t stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without ‘due process of law,’ Arndt. 14, and the guarantee that ‘[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]’ ” 530 U.S. at 476-77, 120 S.Ct. 2348. It then discussed several centuries of precedent, summarizing that a criminal defendant may not be “expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.” Id. at 482-83, 120 S.Ct. 2348.
Apprendi explained that AlmendarezTorres was “at best an exceptional departure from ... historic practice” and a “limited” and “narrow” exception based on “unique facts!.]” Id. at 487, 488 n. 14, 489-90, 120 S.Ct. 2348. Twice in its opinion, the Apprendi Court emphasized that Almendarez-Torres was different because “Almendarez-Torres had admitted the three earlier convictions for aggravated felonies!,]” and those prior convictions “had been entered pursuant to proceedings *403 with substantial procedural safeguards of their own[.]” Id. at 488, 120 S.Ct. 2348; see also id. (reiterating the same points). Thus, “no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court.” Id.
Having explained the historical principles and the Almendarez-Torres exception, the Apprendi Court summarized the law as follows, in the now-famous Apprendi rule:
“[0]ur reexamination of our eases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: ‘[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.’ ”
Id. at 490, 120 S.Ct. 2348 (quoting Jones, 526 U.S. at 252-53, 119 S.Ct. 1215 (Stevens, J., concurring); citing id. at 253, 119 S.Ct. 1215 (Scalia, J., concurring)). Applying this newly articulated rule, the Apprendi court ruled that it was unconstitutional for the sentencing judge to increase Apprendi’s sentence beyond the statutory maximum based on a judicial finding that the crime to which Apprendi pled guilty constituted a hate crime. In doing so, it compared Almendarez-Torres, reiterating that: “there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.” Apprendi 530 U.S. at 496, 120 S.Ct. 2348.
IV.
Based on these constitutional principles, Garras requests habeas relief under AEDPA. Specifically, he claims that the trial court violated his Sixth Amendment and Due Process rights by finding that his prior 1997 conviction constituted a “crime of violence” and argues that the state appellate court decisions .affirming that finding were “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States” in Apprendi. See 28 U.S.C. § 2254(d)(1).
AEDPA “ ‘imposes a highly deferential standard for evaluating state-court rulings’ and ‘demands that state-court decisions be given the benefit of the doubt.’ ” Felkner v. Jackson, — U.S. -, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (quoting Renico v. Lett, — U.S.-, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)). We must use habeas corpus as a “ ‘guard against extreme malfunctions in the state criminal justice systems,’ not a substitute for ordinary error correction through appeal.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). Thus, we may grant habeas relief under AEDPA only if the state court’s adjudication of a claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]” or “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the *404 State court proceeding.”[6] 28 U.S.C. § 2254(d).
Because the state court identified and relied on the correct governing legal rule established by Apprendi, we must apply AEDPA’s “unreasonable application” standard.[7] See Williams v. Taylor, 529 U.S. 362, 407-08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under AEDPA’s “unreasonable application” standard, we “may not issue the writ [if we merely] conclude[ ] ... that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.” Id. at 411, 120 S.Ct. 1495. “Rather, that application must be ‘objectively unreasonable.’ ” Renico, 130 S.Ct. at 1862 (quoting Williams, 529 U.S. at 409, 120 S.Ct. 1495). In other words, we must consider whether the state court’s “determination can[] be reconciled with any reasonable application of the controlling standard[.]” Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (emphasis added). Garrus must show that “the state court’s ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 131 S.Ct. at 786-87.
This case turns on the meaning of the “unreasonable application” standard. Garrus argues that the state court unreasonably applied Apprendi and its prior conviction exception by permitting the trial court to determine at sentencing that Garrus’s prior 1997 conviction for burglarizing an unoccupied building (second-degree burglary) actually involved burglarizing an occupied building. In response, the Commonwealth argues that Garrus cannot meet his burden of proving that the state court’s application of Apprendi was objectively unreasonable because neither Apprendi nor any case since has explicitly defined the scope of “the fact of a prior conviction” exception. However, our determination is not dependent on a fully delineated interpretation or application of “the fact of a prior conviction” exception, only a reasonable one. Panetti, 551 U.S. at 953, 127 S.Ct. 2842 (“That the standard is stated in general terms does not mean the application was reasonable.”). The AEDPA standard is not so “myopic” nor “constrained” that it requires the full scope of all cleaidy established laws to be precisely defined. Jamison v. Klem, 544 F.3d 266, 273 (3d Cir.2008); see also id. (noting that if a Supreme Court decision must precisely resolve a given issue under AEDPA, only the “contrary to” standard would exist, and the “unreasonable application” standard would be rendered meaningless). Rather, AEDPA requires that if a clearly established rule or principle is stated, however general, state courts must adhere to a reasonable application of that *405 rule.[8] Panetti 551 U.S. at 953, 127 S.Ct. 2842.
Apprendi clearly requires that any fact “other than the fact of a prior conviction” must be submitted to a jury if it will increase the penalty beyond the statutory maximum. 530 U.S. at 490, 120 S.Ct. 2348. Under AEDPA there is undoubtedly a broad spectrum of reasonable applications of this rule, but a fact that actually defies and contradicts a prior conviction falls squarely outside the spectrum of reasonable interpretations. Cf. Wilson v. Knowles, 638 F.3d 1213, 1215 (9th Cir. 2011) (“Courts may reasonably disagree about some of the precise boundaries of the exception____But that does not mean that Apprendi is amorphous.... The judge’s fact-finding seven years after the 1993 conviction extended beyond any reasonable interpretation of the prior conviction exception.”). We can find no reasonable basis for applying Apprendi to allow judicial finding of a fact that is inconsistent with and contradicts the facts established through constitutional procedures. The very reason for the exception is to recognize facts that have already “been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.” Jones, 526 U.S. at 249, 119 S.Ct. 1215. The phrase “fact of a prior conviction” might be reasonably construed to allow judicial factfinding of a fact underlying a prior conviction or a fact consistent with a prior conviction. However, absent case law authorizing some type of paradoxical interpretation, “fact of a prior conviction” cannot reasonably be interpreted to allow judicial factfinding of a fact contradicting a prior conviction or a fact inconsistent with a prior conviction.[9]
*406 No existing precedent so much as hints that a paradoxical interpretation of Apprendi might be reasonable.[10] Thus, under Apprendi, it was objectively unreasonable for the state court to allow Garrus to be sentenced beyond the statutory maximum based on a mere allegation that actually defied and contradicted his prior conviction. The Commonwealth proffers several cases, which it argues could have supported the state court’s decision to apply the prior conviction exception in Garrus’s case, but its attempts fall flat.
Despite the Commonwealth’s attempts to paint it as such, Almendarez-Torres is not a panacea allowing recidivism-related judicial factfinding, or supporting the state court’s determination that Apprendi’s pri- or conviction exception permitted the sentencing judge to find that Garrus had burglarized an occupied building despite his plea to the contrary. Apprendi cited Almendarez-Torres as the “limited” and “narrow” exception to the Apprendi rule, 530 U.S. at 488 n. 14, 489-90, 120 S.Ct. 2348, and explained that the constitutionality of that exception rested on (1) “the certainty that procedural safeguards attached to any ‘fact’ of prior conviction,” and (2) “the reality that Almendarez-Torres did not challenge the accuracy of that ‘fact’ in his case[.]” Id. at 488, 120 S.Ct. 2348. In fact, Apprendi emphasized these factors at least twice, and it is important to note that neither factor is present in this case. Regarding the first factor, the only “fact” judicially found by the sentencing court in Almendarez-Torres was the actual fact that the defendant was convicted, and that “fact” had previously been established through a conviction process applying procedural safeguards. In contrast, Garrus was only accused of — not convicted of — the violent crime of burglarizing an occupied building (which would have been first-degree burglary). More importantly, Garrus only pled guilty and was convicted of burglarizing an unoccupied building (second-degree burglary). Thus, unlike the Almendarez-Torres defendant, whose sentence was enhanced based on actual prior convictions, Garrus’s sentence was enhanced beyond the statutory maximum without a basis in any jury determination or plea admission. Because the “fact” of which Garrus was accused was never found by a jury nor was it an element of the crime for which he pled guilty, no procedural safeguards attached to the finding of this “fact.”
As to the second factor, Garrus makes clear in his reply brief that, unlike Almendarez-Torres, he did not concede or admit the fact at issue. In fact, at the sentencing hearing, he questioned the judicial finding that his 1997 conviction was a “crime of violence.” (Sentencing Hr’g Tr. 28, May 8, 2001, see App. at 177a.) A defendant waives his Apprendi rights only if he “either stipulates to the relevant facts or consents to judicial factfinding.” Blakely v. Washington, 542 U.S. 296, 310, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (citing Apprendi, 530 U.S. at 488, 120 S.Ct. 2348; Duncan v. Louisiana, 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). Thus, neither of the two factors that allowed Almendarez-Torres to stand as a *407 narrow exception to Apprendi apply in this case. As Apprendi explained, “there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt,” as occurred in Almendarez-Torres, and “allowing the judge to find the required fact under a lesser standard of proof[,]” as occurred in both Apprendi and here in Garrus’s case. See 530 U.S. at 496, 120 S.Ct. 2348. Therefore, it was objectively unreasonable for the state court to find that Almendarez-Torres authorized the application of Apprendi’s prior conviction exception in this case.
Had Garrus been convicted of first-degree burglary in 1997 (based on a jury finding or plea establishing that he burglarized a building that was occupied and adapted for overnight accommodation), we do not doubt that under Almendarez-Torres, the court sentencing him for his later manslaughter conviction could have taken note of the earlier first-degree burglary conviction and held that it qualified as a crime of violence under Pennsylvania’s “three strikes” law. However, Garrus was convicted of second-degree burglary.
Given the highly deferential AEDPA standard, it is even possible that if Pennsylvania merely had a generic burglary statute that did not differentiate between burglarizing an occupied or unoccupied building, a reasonable application of the “fact of a prior conviction” exception might have permitted the judge to look at facts underlying the prior burglary conviction to determine whether Garrus was convicted of burglarizing an occupied building.[11] See, e.g., United States v. Santiago, 268 F.3d 151, 153, 157 (2d Cir.2001) (finding that Apprendi allows a sentencing judge to find “not only the mere fact of previous convictions but [certain] other related issues as well”);[12] cf. Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (holding that under a federal “three strikes” law, the sentencing judge may only find facts that were necessary to the prior conviction). However, the sentencing judge in this case *408 looked at the previous conviction for burglarizing an unoccupied building, and nonetheless found facts supporting exactly the opposite proposition: that the building had been occupied. Because Garrus was convicted of burglarizing an unoccupied building, the finding that the building was occupied was simply not a “fact of a prior conviction.” The finding that the building was occupied could be viewed as a fact of a prior accusation of first-degree burglary, or as a fact contradicting a prior conviction for second-degree burglary. Either way, it cannot be reasonably interpreted as a “fact of a prior conviction.”
We likewise disagree with the Commonwealth’s convoluted argument that Shepard somehow supports the state court’s determination because it was decided on a statutory basis rather than a constitutional one. As a threshold matter, we note that Garrus contends that Shepard supports him rather than the Commonwealth. However, because Shepard’s holding was limited to a federal statute that is inapplicable here and its constitutional discussion was mere diet a, Garrus cannot rely on it for relief. See Carey, 549 U.S. at 74, 127 S.Ct. 649 (“‘[C]learly established Federal law’ in § 2254(d)(1) ‘refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court’s decisions as of the time of the relevant state-court decision.’ ” (quoting Williams, 529 U.S. at 412, 120 S.Ct. 1495)).[13] Nevertheless, we will address the Commonwealth’s argument that Shepard somehow made the state court’s application of Apprendi reasonable. Cf. Price v. Vincent, 538 U.S. 634, 643 and n. 2, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (even cases that are not binding might be relevant to the consideration of whether a state court decision is objectively unreasonable).
Shepard involved a sentencing enhancement pursuant to 18 U.S.C. § 924, which applies where a defendant has been previously convicted of violent felonies, including burglaries of buildings. 544 U.S. at 15-16, 125 S.Ct. 1254. Shepard had previously been convicted of burglary four times, but he was convicted of burglarizing structures under Massachusetts law, and thus it was unclear from his convictions whether he had burglarized buildings or some other types of structures such as vehicles. Id. at 16-17, 125 S.Ct. 1254; see also id. at 31, 125 S.Ct. 1254 (O’Connor, J., dissenting). The Supreme Court held, based on principles of statutory interpretation, that the sentencing court was not permitted to look at police reports in order to determine whether the structures the defendant had burglarized were buildings. Id. at 16-22, 125 S.Ct. 1254. It ruled that the sentencing court was “limited to the terms of the charging document, the terms of a plea agreement or [the terms of the] transcript of [the plea] colloquy ... or to some comparable judicial record of this information.” Id. at 26, 125 S.Ct. 1254.
The Commonwealth suggests that the state court could have gleaned support from Shepard by finding that because Shepard’s holding was not constitutionally based, the use of police reports for judicial factfinding was constitutionally permissible. However such non sequitur reasoning is objectively unreasonable. The Shepard Court did nothing more than employ the classic doctrine of constitutional avoidance by deciding the case on a statutory basis. It is entirely unreasonable to read constitutional avoidance as indicative that *409 a practice is constitutionally permissible. In fact, if anything can be read into the Shepard Court’s discussion of the Constitution in dicta, it is that the majority of the Court expressed grave constitutional concerns: four justices cited concerns that looking at police reports underlying a prior conviction posed “serious risks of unconstitutionality” under Apprendi, and Justice Thomas would have gone further and found the entire “fact of a prior conviction” exception to be unconstitutional. See id. at 25, 125 S.Ct. 1254 (plurality); id. at 26-28, 125 S.Ct. 1254 (Thomas, J., concurring in part and concurring in the judgment).
Even assuming for purposes of this analysis that the Supreme Court expressed constitutional uncertainty about Apprendi’s application in Shepard, it does not follow that Apprendi’s application here is unclear. In fact, nothing in Shepard supports the Commonwealth’s argument that “the fact of a prior conviction” might be reasonably construed to mean a fact contradicting a prior conviction because Shepard simply did not involve a fact contradicting a prior conviction. Crucially, Shepard had four times been convicted of burglarizing structures, and the police reports did not contradict this fact. Rather, the police reports supported the conviction for burglary of structures, and merely explained specifically that the types of structures involved were buildings. As the plurality noted, the factual allegations in the Shepard police reports might have been permitted by Apprendi as “a fact about a prior conviction[.]” Shepard, 544 U.S. at 25, 125 S.Ct. 1254 (plurality) (emphasis added). The Shepard dissent’s argument also highlights this distinction by stating that sentencing judges should be able to refer to “internally consistent parts of the record from the earlier conviction.” Id. at 31, 125 S.Ct. 1254 (O’Connor, J., dissenting). In contrast, the police report alleging that Garrus burglarized an occupied building cannot reasonably be interpreted as a fact consistent with or a fact about Garrus’s conviction for burglarizing an unoccupied building.
Rather than supporting the Commonwealth’s argument, Shepard demonstrates that even judicial factfinding that is consistent with a prior conviction might be unconstitutional. By no means does it support the proposition that Apprendi’s “fact of a prior conviction” exception might be reasonably interpreted to allow judicial factfinding that contradicts a prior conviction.
Finally, the Commonwealth strains to argue that some Circuit court cases show that the state court’s application of Apprendi was reasonable. See Kessee v. Mendoza-Powers, 574 F.3d 675 (9th Cir. 2009); United States v. Smith, 474 F.3d 888, 892 (6th Cir.2007), abrogation on other grounds recognized by United States v. Johnson, 640 F.3d 195, 205 (6th Cir.2011); Boyd v. Newland, 467 F.3d 1139 (9th Cir. 2006); United States v. Hollingsworth, 414 F.3d 621 (6th Cir.2005); United States v. Williams, 410 F.3d 397 (7th Cir.2005); United States v. Camacho-Ibarquen, 410 F.3d 1307 (11th Cir.2005); United States v. Kempis-Bonola, 287 F.3d 699 (8th Cir. 2002); Santiago, 268 F.3d at 151. We disagree; none of these cases demonstrates that it was reasonable for the state court to apply Apprendi to sentence a defendant beyond the statutory maximum based on a fact contradicting a prior conviction.[14] In short, none of these cases *410 involves a judicial finding of fact that contradicted the defendant’s prior conviction.[15] *411 In fact, at least one of the cases did not even involve judicial factfinding that increased the penalty beyond the prescribed statutory maximum. See Smith, 474 F.3d at 892.
Upon a thorough and circumspect examination of the potential arguments or theories that “supported or ... could have supported, the state court’s decision[,]” we believe that no “fair-minded jurist could disagree that those arguments or theories are inconsistent with the holding in” Apprendi[16] Harrington, 131 S.Ct. at 786; see also Panetti 551 U.S. at 953, 127 S.Ct. 2842 (The “record ... cannot, under any reasonable interpretation of the controlling legal standard, support [the state’s] legal ruling.”). In fact, no fairminded jurist could disagree that the state court’s paradoxical interpretation of the prior conviction exception renders an absurd result under Apprendi allowing a judge that applies the “three strikes” statute to make the very factual finding that an earlier judge would have been prohibited from making. As we noted above, Apprendi pled guilty to unlawful possession of a weapon, a second-degree offense punishable by a maximum of ten years’ imprisonment, but the judge increased the sentence beyond the statutory maximum based on the finding of an additional factor, effectively imposing punishment on the defendant for a first-degree offense. Apprendi 530 U.S. at 491, 120 S.Ct. 2348. Thus, under Apprendi it is clear that a judge applying the initial sentence for second-degree burglary (under Pennsylvania law) cannot enhance the sentence beyond the statutory maximum based on the finding that the defendant burglarized an occupied building, effectively imposing punishment on the defendant for a first-degree offense. The Commonwealth today would have us believe that Apprendi may be reasonably applied to allow a later judge sentencing a defendant to look back at the defendant’s initial conviction and make the factual finding that the initial sentencing judge was prohibited from making. Apprendi cannot be reasonably construed or applied to allow this absurd result.
Accordingly, we conclude that it was objectively unreasonable for the state court to apply Apprendi’s prior conviction exception to allow judicial factfinding based on an allegation that actually defied and contradicted the elements of the prior conviction. The rule of Apprendi and the prior conviction exception simply cannot be reconciled with the state court decision. In sum, Garras has shown that “the state court’s ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 131 S.Ct. at 786-87.
We recognize the rarity of today’s determination; seldom does a state court’s decision fail to withstand AEDPA’s highly deferential standard. However, our conclusion that the state court unreasonably applied clearly established law by relying on a narrow and inapplicable exception is not unprecedented. See Abdul-Kabir v. *412 Quarterman, 550 U.S. 233, 258, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007) (finding that the state court unreasonably applied clearly established law by relying on an inapplicable “narrow holding” and “ignoring the fundamental principles established by [the Supreme Court’s] most relevant precedents”); Williams, 529 U.S. at 397, 120 S.Ct. 1495 (finding that the state court unreasonably applied clearly established law by relying on an “inapplicable” exception to the law clearly established by Strickland). AEDPA severely constrained our ability to review state court decisions, but it did not render our review void or meaningless. See, e.g., Harrington, 131 S.Ct. at 786 (“§ 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.”); Jamison, 544 F.3d at 273 (the “unreasonable application” standard is not meaningless). We must use our habeas authority only to “guard against extreme malfunctions in the state criminal justice systems,” Harrington, 131 S.Ct. at 786, and today, we exercise our authority to do so.
V.
We conclude that the District Court erred in determining that § 2254(d)(1) prevented it from granting Garrus habeas relief. The state court unreasonably applied Apprendi by allowing Garrus to be sentenced beyond the statutory maximum based on a judicial finding that he burglarized an occupied building when he was actually convicted of burglarizing an unoccupied building.
Having determined that AEDPA does not bar federal habeas relief, we must also consider whether the state court determination had a “substantial and injurious effect” on Garrus’s sentence. Fry v. Pliler, 551 U.S. 112, 116-20, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007); see also Horn, 536 U.S. at 272, 122 S.Ct. 2147 (“none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard”). There is no doubt that the state court’s determination relied on its application of Apprendi to uphold the trial court’s decision to increase the length of Garrus’s sentence, and that Garrus has therefore shown a “substantial and injurious effect.” We conclude that the District Court erred in failing to grant habeas relief under these circumstances. We will reverse the order of the District Court, and remand with directions that a writ of habeas corpus be conditionally granted, providing that petitioner be re-sentenced or released from custody within 120 days, unless, within that time, the Commonwealth of Pennsylvania determines that petitioner qualifies for the sentencing enhancement based on his two 1995 robbery convictions.

. We agree with Judge Hardiman that the order for rehearing en banc misstated the issue. Dissenting Op. of Hardiman, J. at Part I; Order at 1-2, Garrus v. Secretary of the Pa. Dep’t of Corr., No. 09-3586 (3d Cir. Feb. 24, 2012). Nonetheless, the parties have briefed and argued, and we now analyze, the proper question in this case, which is stated above.

. A burglary is only a "crime of violence” when it is "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present!.]” 42 Pa. Cons.Stat. § 9714. Under Pennsylvania law, second-degree and first-degree burglary are mutually exclusive. Second-degree burglaiy is burglary that occurs where the structure "is not adapted for overnight accommodation and ... no individual is present at the time of entry!.]” 18 Pa. Cons.Stat. § 3502(c)(2). First-degree burglary, on the other hand, occurs where the structure is adapted for overnight accommodation, or if an individual is present at the time of entry. 18 Pa. Cons.Stat. § 3502. By definition, then, first-degree burglary that includes both factors (structure adapted for overnight accommodation and an individual present) is a "crime of violence,” but second-degree burglary is not a "crime of violence.” See Commonwealth v. Ausberry, 891 A.2d 752, 756 n. 3 (Pa.Super.Ct.2006) ("[T]he definition of a crime of violence ... corresponds to the definition of first degree burglary as set forth in section 3502(c)(1) and 3502(c)(2).” (quoting Commonwealth v. Guilford, 861 A.2d 365, 375 (Pa.Super.Ct.2004))); Guilford, 861 A.2d at 375 (“[T]he section 9714(g) definition of burglary as a crime of violence corresponds to the definition of burglary as a first degree felony,” and thus, second-degree burglary "is not a crime of violence pursuant to section 9714(g)”).

. On appeal in this Court, Garrus challenges only his sentence under Pennsylvania's “three strikes'' law. Accordingly, we refer solely to the prior resolution of this claim.

. Our review of Garrus’s claim is not barred by the adequate and independent state ground doctrine. See Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In its PCRA opinion, the Pennsylvania Superi- or Court noted that Garrus might have "three strikes” against him even without counting the burglary charge as a "crime of violence,” but it failed to clearly decide the issue, relying instead on the finding that the burglary charge comprised one of the three necessary strikes. Commonwealth v. Garrus, No. 961 EDA 2005, slip op. at 10-11, 902 A.2d 976 (Pa.Super.Ct. Apr. 18, 2006). That opinion was the last state court decision on the merits, see Greene v. Fisher, - U.S. -, 132 S.Ct. 38, 43-45, 181 L.Ed.2d 336 (2011), and because it did not "clearly express! 1 ■ • • reliance on an adequate and independent state-law ground, we may address [the] federal issue considered by the state court.” Harris, 489 U.S. at 263, 109 S.Ct. 1038.

. Judge Greenaway asserts that the Almendarez-Torres rule “remains ... amorphous and undefined!.]” Dissenting Op. of Greenaway, J. at Part III. However, as explained above, even in Almendarez-Torres itself, the Supreme Court did not allow carte blanche factfinding related to recidivism. 523 U.S. at 242-46, 118 S.Ct. 1219. Thus, the holding oí Almendarez-Torres has never been as broad as Judge Greenaway suggests.

. Judge Hardiman computes the frequent rate at which the Supreme Court has reversed habeas decisions of the Courts of Appeals based on failure to afford appropriate deference to state court judgments. Dissenting Op. of Hardiman, J. at Part I. Such statistics cannot dispose of the instant case, especially in light of the Supreme Court's recent reminder that "Oludges must be vigilant and independent in reviewing petitions for the writ[.]” Harrington, 131 S.Ct. at 780 (emphasis added).

. We consider the last state court adjudication on the merits, Greene, 132 S.Ct. at 44-45, which was the Pennsylvania Superior Court's PCRA decision, found at Commonwealth v. Garrus, No. 961 EDA 2005, 902 A.2d 976 (Pa.Super.Ct. Apr. 18, 2006). See Greene, 132 S.Ct. at 43-45 (Pennsylvania Supreme Court's denial of petition for appeal is not considered an adjudication on the merits).

. Our dissenting colleagues appear to agree that the focus of our inquiry should be on the "unreasonable application” prong of AEDPA. Dissenting Op. of Greenaway, J. at Part I; Dissenting Op. of Hardiman, J. at Part I. Judge Greenaway also concedes that “Apprendi is at the forefront of our inquiry,” and that Apprendi limited and narrowed AlmendarezTorres. Dissenting Op. of Greenaway, J. at Part II. At the same time, Judges Greenaway and Hardiman fault us for not identifying a case “expounding on the contours of the amorphous prior-conviction exception.” Id. at V 2; Dissenting Op. of Hardiman, J. at Part I.
AEDPA, however, does not require clearly established federal law to be further elucidated by additional precedent before an application of that law may be unreasonable. See Panetti, 551 U.S. at 953, 127 S.Ct. 2842 ("AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.’ ” (quoting Carey v. Musladin, 549 U.S. 70, 81, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006))). Instead, under AEDPA, "even a general standard may be applied in an unreasonable manner.” Id. (citing Williams, 529 U.S. 362, 120 S.Ct. 1495). Thus, our task is to review the Pennsylvania Superior Court’s application of Apprendi, the clearly established federal law we do have, to Garrus's claim.
By contrast, the rationale of our dissenting colleagues would render the Apprendi rule meaningless. It would, in effect, shift this case to the "contrary to” prong of AEDPA, preserving the “unreasonable application” prong of AEDPA in name only. Such an analysis is particularly inappropriate here because the Pennsylvania Superior Court correctly "identified controlling Supreme Court precedent.” Dissenting Op. of Greenaway, J. at Part I (citing Williams, 529 U.S. at 406, 120 S.Ct. 1495).

. Judge Greenaway faults our opinion for an alleged internal inconsistency: we rely on Apprendi, a case concerned with the Sixth Amendment right to a jury trial, to require the sentencing judge to determine that Garrus’s prior conviction was not a crime of violence. Dissenting Op. of Greenaway, J. at Part III. But Apprendi does not prohibit a judge from finding facts that do not increase a sentence beyond the statutory maximum. Rather, Apprendi only prohibits judicial factfinding that increases a sentence beyond the statutory maximum. 530 U.S. at 490, 120 S.Ct. 2348.

. Judge Greenaway counters that "no Supreme Court precedent suggests that the majority’s interpretation is the only reasonable interpretation.” Dissenting Op. of Greenaway, J. at Part III. This argument implies that Judge Greenaway would defer to an objectively unreasonable state court judgment as long as there were more than one possible reasonable application of a Supreme Court precedent. While AEDPA mandates a highly deferential standard, it does not go as far as Judge Greenaway suggests. Instead, the test is whether the state court judgment "can[] be reconciled with any reasonable application of the controlling standard[.]” Panetti, 551 U.S. at 953, 127 S.Ct. 2842.

. We do not make any determination regarding this hypothetical issue; rather, we raise it to highlight the narrow scope of the issue before us today.

. The Dissents urge us to follow Santiago. Dissenting Op. of Greenaway, J. at Part III; Dissenting Op. of Hardiman, J. at Part II. There, the issue was whether, under the federal recidivism statute, Apprendi required a jury to find beyond a reasonable doubt that the defendant's three predicate convictions were committed on separate occasions. Santiago, 268 F.3d at 152-53. Then-Judge Soto-mayor ruled that Apprendi did not prohibit sentencing judges from "determining] the ‘who, what, when, and where’ of a prior conviction.” Id. at 156. But the Second Circuit declined to extend this exception to the Apprendi rule "to all issues related to recidivism[.]” Id.
Santiago is not controlling here. As an initial matter, Santiago is not "existing precedent” for AEDPA purposes. See Harrington, 131 S.Ct. at 785 ("Federal habeas relief may not be granted for claims subject to [28 U.S.C. § 2254(d)(1) ] unless it is shown that the earlier state court's decision ... involved an unreasonable application” of "federal law then clearly established in the holdings of the Supreme Court.”) (citations and internal quotations omitted). More importantly, permitting a sentencing judge to determine facts related to the "who, what, when, and where” of a prior conviction is altogether different from allowing judicial factfinding that completely contradicts a prior conviction. Here, the sentencing court found as a "fact” related to Garrus’s prior conviction an allegation that was contained in a police report and victim statement and that was irreconcilable with his plea agreement. The Second Circuit's reasoning in Santiago cannot be stretched to these facts.

. We need not reach the issue of whether Teague’s retroactivity inquiry also precludes Garrus from relying on Shepard, for relief. See Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (noting that Teague's retroactivity inquiry remains relevant post-AEDPA).

. Contrary to Judge Hardiman’s argument, there is no circuit split on this issue, and our decision here does not create one. Dissenting Op. of Hardiman, J. at Part II. Neither Portalatin v. Graham, 624 F.3d 69 (2d Cir.2010), nor United States v. Davis, 260 F.3d 965 (8th Cir.2001), addresses the question in this case. For this reason, we express no view on *410 whether these cases were decided correctly, nor do we question the fairmindedness of those jurists.
In Portalatin, the petitioners were sentenced under New York’s recidivism statute. 624 F.3d at 72. Pursuant to that law, a defendant is subject to an increased sentencing range as a repeat offender "based solely on whether [he] [has] two prior convictions.” Id. at 88 (quoting People v. Rivera, 5 N.Y.3d 61, 800 N.Y.S.2d 51, 833 N.E.2d 194, 198 (2005) (original emphasis)). After a sentencing court determines that a defendant is a repeat offender and that an increased sentencing range applies, it considers "the history and character of the defendant, and the nature and circumstances of his crime,” before selecting a sentence within the increased range. Id. at 90. In Portalatin, the Second Circuit first agreed with the New York Court of Appeals that if the recidivism statute were construed "to require the court to find additional facts about the defendant before imposing a recidivism sentence, the statute[ ] would violate Apprendi.” Id. at 89 (quoting Rivera, 800 N.Y.S.2d 51, 833 N.E.2d at 198) (emphasis added). But the Portalatin court also concluded that a sentencing court could consider subsidiary facts about a defendant's prior convictions before imposing a repeat offender sentence without violating Apprendi. Id. at 92. Nonetheless, the important point here is that the Second Circuit did not discuss whether the sentencing court could find or consider underlying facts that contradict an offender’s prior conviction. The failure to address this subject is unsurprising as the Portalatin petitioners did not dispute their underlying convictions. Id. at 75-78.
Similarly, in Davis, the appellant, sentenced as a repeat offender under federal law, argued that due process required a jury to conclude beyond a reasonable doubt that his pri- or convictions were qualifying felonies under the recidivism statute. 260 F.3d at 967-69. The Eighth Circuit held only that, under Apprendi and Almendarez-Torres, the "fact of prior conviction includes ... a determination of whether a conviction is one of the enumerated types qualifying for the sentence enhancement under [18 U.S.C. § 3559].” Id. at 969 (citation omitted). Conspicuously absent from the Davis decision is any indication that the Eighth Circuit would have held it reasonable for the state court, in making its determination, to find facts precluded by the prior conviction.

. Only Garrus cites to a case that is close to being on point: Wilson, 638 F.3d 1213. Wilson was convicted by a jury of driving under the influence with a prior felony conviction. Id. at 1214. At sentencing, the judge found that Wilson's conviction was his third strike under California's "three strikes” law, and enhanced his sentence accordingly. In order to find that one of the previous convictions counted as a strike under California’s "three strikes” law, the sentencing judge had to make several findings of fact that were not necessary for the conviction. Id. at 1215. The issue for the Ninth Circuit was whether such judicial findings "fell within the prior conviction exception.” Id. The Ninth Circuit started by noting that "[c]ourts may reasonably disagree about some of the precise boundaries of the exception ... [b]ut that does not mean that Apprendi is amorphous.” Id. It went on to find that the judicially found facts — such as the extent of the victim’s injuries — were disputed and not found by a jury or in any way necessary to the conviction. Id. "The judge ... speculated as to how a [previous] jury ... might have evaluated the evidence if the evidence had been offered and if a jury had been impaneled to evaluate it.” Id. Thus, the judge’s factfinding "extended beyond any reasonable interpretation of the prior conviction exception.” Id.
Just as in Wilson, Garrus’s sentencing judge made judicial findings of fact that were not necessary to his prior conviction, and then speculated as to how a jury might have evaluated the evidence had it been offered, or whether Garrus might have admitted to the evidence at his plea hearing. The Commonwealth tries to distinguish Wilson on the basis that the facts here in Garrus's case are "less controversial” than the judicially found facts in Wilson, but we find such a distinction unavailing; regardless of how controversial the facts were in Wilson, the determinative issue was that such facts were not necessary to the verdict, and were never determined by a jury nor pled to by the defendant. Id. at 1215-16. If anything, Garrus’s case is stronger than Wilson’s because in Garrus's case the facts actually contradicted his prior conviction, whereas in Wilson’s case, the facts were simply not necessary to the prior conviction.

. Judge Greenaway accuses us of wasting “pages examining Supreme Court precedent” without "grappl[ing] with precedent that undermines” our position. Dissenting Op. of Greenaway, J. at Part II. We agree that it would have been simpler for us to prove the reasonableness of our own interpretation of Apprendi. But we recognize that under AED-PA, we “must determine what arguments or theories supported or ... could have supported the state court’s decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.” Harrington, 131 S.Ct. at 786. Our analysis comports with this standard.