# SUPREME COURT OF THE UNITED STATES

## DAMION ST. PATRICK BASTON *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 16–5454.　Decided March 6, 2017

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, dissenting from the denial of certiorari.

The Constitution, through the Foreign Commerce Clause, grants Congress authority to "regulate Commerce with foreign Nations." Art. I, §8, cl. 3. Without guidance from this Court as to the proper scope of Congress' power under this Clause, the courts of appeals have construed it expansively, to permit Congress to regulate economic activity abroad if it has a substantial effect on this Nation's foreign commerce. In this case, the Court of Appeals declared constitutional a restitution award against a non-U. S. citizen based upon conduct that occurred in Australia. The facts are not sympathetic, but the principle involved is fundamental. We should grant certiorari and reaffirm that our Federal Government is one of limited and enumerated powers, not the world's lawgiver.

## I

Petitioner Damion St. Patrick Baston is a citizen of Jamaica. He forced numerous women to prostitute for him through violence, threats, and humiliation. One of his victims, K. L., was a citizen of Australia. She prostituted for petitioner in Australia, the United States, and the United Arab Emirates before escaping from his control. While in the United States, petitioner was arrested and charged with the sex trafficking of K. L. by force, fraud, or coercion, 18 U. S. C. §1591(a), "'in the Southern District of Florida, Australia, the United Arab Emirates, and elsewhere.'" 818 F. 3d 651, 658 (CA11 2016). As relevant

here, §1591(a)(1) states that the sex trafficking must "affec[t] interstate or foreign commerce." Congress has granted federal courts "extra-territorial jurisdiction" over sex trafficking if the "alleged offender is present in the United States, irrespective of the nationality of the alleged offender." §1596(a)(2).

After a jury convicted petitioner, the District Court ordered him to pay K. L. $78,000 in restitution, which included the money she earned while prostituting for petitioner in the United States. See §1593 (requiring sentencing courts to order restitution in "the full amount of the victim's losses" for offenses under §1591). But the court refused to include in the restitution award the $400,000 that K. L. earned while prostituting in Australia. In the court's view, the Foreign Commerce Clause did not permit an award of restitution based on petitioner's extra-territorial conduct. 818 F. 3d, at 657, 660.

The Court of Appeals vacated the order of restitution and remanded with instructions to increase the award by $400,000 to account for K. L.'s prostitution in Australia. The court reasoned that whatever the outer bounds of the Foreign Commerce Clause might be, this Court has suggested that it has at least the same scope as the Interstate Commerce Clause. Relying on our Interstate Commerce Clause precedents, the Court of Appeals concluded that the Foreign Commerce Clause grants Congress power to regulate "activities that have a 'substantial effect' on commerce between the United States and other countries," including sex trafficking overseas. *Id.*, at 668 (citing *Gonzales* v. *Raich*, 545 U. S. 1, 16–17 (2005)).

## II

The Court of Appeals correctly noted that this Court has never "thoroughly explored the scope of the Foreign Commerce Clause." 818 F. 3d, at 667; accord, *e.g.*, Goodno, When the Commerce Clause Goes International: A Pro-

posed Legal Framework for the Foreign Commerce Clause, 65 Fla. L. Rev. 1139, 1148–1149 (2013) ("The U. S. Supreme Court has not yet articulated the extent of Congress's power under the Foreign Commerce Clause to enact laws with extraterritorial reach. Because of this lack of guidance . . . lower courts are at a loss for how to analyze Foreign Commerce Clause issues"). The few decisions from this Court addressing the scope of the Clause have generally been confined to laws regulating conduct with a significant connection to the United States. See, *e.g.*, *Board of Trustees of Univ. of Ill.* v. *United States*, 289 U. S. 48, 57 (1933) ("The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted"); *United States ex rel. Turner* v. *Williams*, 194 U. S. 279, 290 (1904) ("[T]he power to regulate commerce with foreign nations . . . includes the entrance of ships, the importation of goods, and the bringing of persons into the ports of the United States"). This Court has also articulated limits on the power of the States to regulate commerce with foreign nations under the so-called dormant Foreign Commerce Clause. See, *e.g.*, *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U. S. 434, 449–454 (1979). We have not, however, considered the limits of Congress' power under the Clause to regulate conduct occurring entirely within the jurisdiction of a foreign sovereign.

In the absence of specific guidance, the courts of appeals—including the court below—have understandably extended this Court's Interstate Commerce Clause precedents abroad. In *United States* v. *Lopez*, 514 U. S. 549, 558–559 (1995), we held that Congress is limited to regulating three categories of interstate activity: "the use of the channels of interstate commerce," "the instrumentalities of interstate commerce," and "activities that substantially affect interstate commerce." Some courts of appeals "have imported the *Lopez* categories directly into the

foreign context," some "have applied *Lopez* generally but recognized that Congress has greater power to regulate foreign commerce," and others have gone further still, "holding that Congress has authority to legislate under the Foreign Commerce Clause when the text of a statute has a constitutionally tenable nexus with foreign commerce." *United States* v. *Bollinger*, 798 F. 3d 201, 215 (CA4 2015) (internal quotation marks omitted); see also *id.*, at 215–216 ("Instead of requiring that an activity have a substantial effect on foreign commerce, we hold that the Foreign Commerce Clause allows Congress to regulate activities that demonstrably affect such commerce").

### III

I am concerned that language in some of this Court's precedents has led the courts of appeals into error. At the very least, the time has come for us to clarify the scope of Congress' power under the Foreign Commerce Clause to regulate extraterritorially.

### A

The courts of appeals have relied upon statements by this Court comparing the foreign commerce power to the interstate commerce power, but have removed those statements from their context. In certain contexts, this Court has described the foreign commerce power as "exclusive and plenary," *Board of Trustees*, *supra*, at 56–57 (citing *Gibbons* v. *Ogden*, 9 Wheat. 1, 196–200 (1824)), explaining that Congress' commerce power "when exercised in respect of foreign commerce may be broader than when exercised as to interstate commerce," *Atlantic Cleaners & Dyers, Inc.* v. *United States*, 286 U. S. 427, 434 (1932); see also *Brolan* v. *United States*, 236 U. S. 216, 218–220 (1915). None of these opinions, however, "involve[d] legislation of extraterritorial operation which purports to regulate conduct inside foreign nations."

Colangelo, The Foreign Commerce Clause, 96 Va. L. Rev. 949, 1001 (2010). This Court's statements about the comparative breadth of the Foreign Commerce Clause are of questionable relevance where the issue is Congress' power to regulate, or even criminalize, conduct within another nation's sovereign territory.

Moreover, this Court's comparative statements about the breadth of the Foreign Commerce Clause have relied on some "evidence that the Founders intended the scope of the foreign commerce power to be greater" than Congress' power to regulate commerce among the States. *Japan Line, supra*, at 448. Whatever the Founders' intentions might have been in this respect, they were grounded in the original understanding of the Interstate Commerce Clause. But this Court's modern doctrine has "drifted far from the original understanding." *Lopez, supra*, at 584 (THOMAS, J., concurring). For one thing, the "Clause's text, structure, and history all indicate that, at the time of the founding, the term '"commerce" consisted of selling, buying, and bartering, as well as transporting for these purposes.'" *Raich*, 545 U. S., at 58 (THOMAS, J., dissenting) (quoting *Lopez, supra*, at 585 (opinion of THOMAS, J.)). For another, "the very notion of a 'substantial effects' test under the Commerce Clause is inconsistent with the original understanding of Congress' powers and with this Court's early Commerce Clause cases." *United States* v. *Morrison*, 529 U. S. 598, 627 (2000) (THOMAS, J., concurring).

Thus, even if the foreign commerce power were broader than the interstate commerce power as understood at the founding, it would not follow that the foreign commerce power is broader than the interstate commerce power as this Court now construes it. But rather than interpreting the Foreign Commerce Clause as it was originally understood, the courts of appeals have taken this Court's modern interstate commerce doctrine and assumed that the

foreign commerce power is at least as broad. The result is a doctrine justified neither by our precedents nor by the original understanding.

## B

Taken to the limits of its logic, the consequences of the Court of Appeals' reasoning are startling. The Foreign Commerce Clause would permit Congress to regulate any economic activity anywhere in the world, so long as Congress had a rational basis to conclude that the activity has a substantial effect on commerce between this Nation and any other. Congress would be able not only to criminalize prostitution in Australia, but also to regulate working conditions in factories in China, pollution from power-plants in India, or agricultural methods on farms in France. I am confident that whatever the correct interpretation of the foreign commerce power may be, it does not confer upon Congress a virtually plenary power over global economic activity.

\* \* \*

We should grant certiorari in this case to consider the proper scope of Congress' Foreign Commerce Clause power.

I respectfully dissent.