# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 19-2906

———————————————

United States of America

*Plaintiff - Appellee*

v.

Amos Kiprop Koech

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: October 23, 2020
Filed: March 26, 2021

——————————

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

——————————

LOKEN, Circuit Judge.

A jury convicted Amos Koech of commercial sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and conspiring to commit that offense in violation of § 1594(c). The substantive count was based on proof that Koech paid co-defendant Andre Mathis $60 to have sex with fifteen-year-old C.D. in late June 2017.

The district court[1] sentenced Koech to 130 months imprisonment. He appeals his conviction, arguing (1) the phrase "reasonable opportunity to observe" in § 1591(c) is unconstitutionally vague, (2) the district court improperly instructed the jury on the interstate commerce element of these sex trafficking offenses, and (3) the evidence was insufficient to prove that his conduct affected interstate commerce. We affirm.

## I. The Vagueness Issue

After indictment, Koech moved to dismiss, arguing the phrase "reasonable opportunity to observe" in 18 U.S.C. § 1591(c) is void for vagueness. Adopting the magistrate judge's[2] report and recommendation, the district court concluded that § 1591(c) is not unconstitutionally vague "because 'reasonable opportunity to observe' would 'provide a person of ordinary intelligence fair notice of what is prohibited,' is subject to common understanding, and is typical of standards that juries are asked to consider," quoting United States v. Paul, 885 F.3d 1099, 1105 (8th Cir.), cert. denied, 139 S. Ct. 290 (2018). On appeal, Koech argues the district court erred and therefore "the convictions must be vacated as constitutionally infirm."

Section 1591(a) provides in relevant part:

> Whoever knowingly -- (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits . . . a person . . . knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota.

Section 1591(c) provides that "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so . . . obtained . . . the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years."

Section 1591(c) does not make § 1591 a strict liability criminal offense because § 1591(a) includes another traditional scienter requirement -- that the offender must know or recklessly disregard the fact that the victim "will be caused to engage in a commercial sex act." However, § 1591(c) does alter the *mens rea* requirement regarding the victim's age. Congress adopted this amendment to reflect the Supreme Court's recognition that "the perpetrator [who] confronts the underage victim personally . . . may reasonably be required to ascertain that victim's age." United States v. X-Citement Video, Inc., 513 U.S. 64, 72 n.2 (1994). See generally United States v. Whyte, 928 F.3d 1317, 1328-31 (11th Cir. 2019), cert. denied, 140 S. Ct. 875 (2020); United States v. Copeland, 820 F.3d 809, 813-14 (5th Cir.), cert. denied, 136 S. Ct. 2531 (2016).

Koech argues that the phrase "reasonable opportunity to observe" is unconstitutionally vague because it has no ascertainable application or meaning, and fails to give notice of the conduct it punishes. In reviewing this contention, we must begin with a well-established principle: "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." United States v. Cook, 782 F.3d 983, 987 (8th Cir.), cert. denied, 577 U.S. 906 (2015), quoting Holder v. Humanitarian L. Project, 561 U.S. 1, 18 (2010). Thus, we must consider whether § 1591(c) is vague as applied to the facts of this case. If Koech had an objectively reasonable opportunity to observe C.D., "[his] vagueness challenge to section 1591(c) fails." Whyte, 928 F.3d at 1331; see United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002). So we begin with a review of the evidence at trial from this perspective.

The evidence at trial -- which included C.D.'s lengthy direct testimony and cross examination -- established that, in June 2017, Mathis and a friend picked up C.D. and her seventeen-year-old friend, who were then living at a home for sexually-exploited children, and took them to Mathis's apartment in Duluth, Minnesota. The men plied the girls with drugs and engaged in group sex. The next morning, Mathis proposed that C.D. engage in commercial sex for his benefit. Over the next three weeks, Mathis "trained" C.D. to perform properly for customers. He supplied drugs, committed repeated sexual and physical abuse, took nude pictures of C.D., and advertised her on Facebook.

A co-worker introduced Koech to Mathis, who began visiting Koech at his apartment in Duluth. One evening, Mathis brought C.D. and her friend to Koech's apartment. During this first encounter, Mathis told Koech that C.D. was eighteen. Koech viewed and touched her while the two men discussed the price for C.D.'s sexual services. Mathis set the price at $150. Koech said he did not have enough money. They agreed Mathis and C.D. would return after Koech's next payday. Koech and Mathis exchanged text messages and phone calls, haggling over the price for C.D.'s services before agreeing on $60. On June 26, Mathis and C.D. returned to Koech's apartment. Koech and C.D. drank beer and smoked synthetic marijuana. After Koech paid Mathis, C.D. and Koech went to his bedroom, where Koech told C.D. she was "too beautiful to be eighteen." C.D. replied that she was eighteen, as Mathis had instructed, but she thought Koech did not believe her. They engaged in oral sex and attempted vaginal sex. Koech touched her breasts and genitals, and took nude pictures of her with his cell phone. C.D. left after forty-five minutes.

C.D. further testified that she and Mathis returned to Koech's apartment about three days later, and she and Koech engaged in vaginal intercourse for fifteen minutes before she and Mathis left. There was no confirming evidence of this third encounter, like the texts, phone calls, and pictures corroborating the second encounter. Defense

counsel vigorously cross examined C.D. about her subsequent inconsistent statements to law enforcement officers and argued to the jury that she fabricated the third encounter, making her entire testimony not credible. The jury obviously rejected this argument. C.D. estimated that in her three visits to Koech's apartment, she spent up to seven hours in his presence. She testified Koech never inquired about her age.

On July 7, officers conducting a probation sweep of Mathis's apartment found C.D. hiding in a closet. In Mathis's presence, she gave a false name and said she was eighteen but provided information that quickly revealed her identity. The officers took C.D. to the Duluth police station where she told Officer Derek Pemrick that Mathis had forced her to engage in sex acts with Koech in exchange for money.

Pemrick then conducted multiple video-recorded interviews of Koech. He claimed the only money he ever paid Mathis was $60 for a Bluetooth speaker. A warrant search of his cell phone, manufactured in China, revealed extensive calls and text messages between Koech and Mathis that included negotiating for sex acts between C.D. and Koech. Forensic analysis of the phone recovered nude images of C.D. Koech deleted the day of Pemrick's interview. Subsequently, Koech admitted Mathis twice visited his apartment, bringing two girls the first time and one the second time. He said one girl was nineteen and the other (C.D.) was eighteen but admitted that "if a girl says she's eighteen . . . two years minus, that's sixteen." He said the meetings were initiated by text messages with Mathis. He denied having sex with either girl but eventually admitted he touched one girl's breasts and stomach and attempted to have sex with her. He also admitted paying Mathis $60 but insisted it was for a speaker, not sex. During a third interview, Koech admitted having sexual contact with C.D. and recording her dressing after they engaged in sexual acts. He said he deleted the pictures because he was "scared of . . . being charged with child pornography or something like that."

The jury was instructed that Koech could be convicted of the age element of a § 1591(a) offense if it found beyond a reasonable doubt "that the defendant knew or was in reckless disregard of the fact that [C.D.] had not attained the age of 18 or had a reasonable opportunity to observe that she had not attained the age of 18 years." In closing argument, the government argued, without objection:

> And whether you find that the Defendant knew that she was under 18 or he recklessly disregarded . . . or had a reasonable opportunity to observe that [C.D.] was under 18, and I submit there was evidence of all of those. Any will do.

The above summarized evidence -- Koech's multiple encounters with C.D., clothed and unclothed; his comments to C.D. and law enforcement about her age; the nude pictures he took of C.D. at the time that he later deleted because they could be child pornography -- demonstrate that Koech had a reasonable opportunity to observe C.D. Accordingly, Koech engaged in conduct that is clearly proscribed and "cannot complain of the vagueness of the law." Cook, 782 F.3d at 987; cf. United States v. Blake, 868 F.3d 960, 976 (11th Cir. 2017), cert. denied, 138 S. Ct. 1580 (2018).

In addition, we agree with the district court (and other courts) that the term reasonable opportunity to observe "provide[s] a person of ordinary intelligence fair notice of what is prohibited, is subject to common understanding, and is typical of standards that juries are asked to consider." See United States v. Mozie, 752 F.3d 1271, 1283 (11th Cir. 2014) ("reckless disregard" and "reasonable opportunity to observe" are "familiar legal concepts . . . in defining proscribed conduct"), abrogated by statute on other grounds, Whyte, 928 F.3d at 1331. "Condemned to the use of words, we can never expect mathematical certainty from our language." Grayned v. City of Rockford, 408 U.S. 104, 110 (1972). But "[a] person of ordinary intelligence would also reasonably understand that . . . participation in a commercial sex trafficking venture could result in criminal culpability." Cook, 782 F.3d at 989-90.

By its plain terms, § 1591(c) does not delineate prohibited acts, it rationally modifies how the government may prove § 1591(a)(1)'s *mens rea* requirements when the defendant had a reasonable opportunity to observe the age of his sex trafficking victim. See United States v. White, 882 F.2d 250, 252 (7th Cir. 1989) ("It is enough that he knows that what he is about to do is probably or certainly criminal.").

## II. Interstate Commerce Issues

On appeal, Koech raises two issues relating to the element of a § 1591(a)(1) offense that requires the government to prove that the defendant's commercial sex trafficking was "in or affecting interstate or foreign commerce." First, he argues the district court abused its discretion by declining to adopt his proposed jury instruction and instead giving an instruction that did not require the jury to find that his conduct had an "actual" effect on interstate commerce, thereby denying him this defense. We review a challenge to the district court's jury instructions for abuse of discretion and "will affirm if the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Collier, 932 F.3d 1067, 1076 (8th Cir. 2019) (quotation omitted).[3]

The Commerce Clause authorizes Congress to regulate: (i) "the channels of interstate commerce," (ii) "the instrumentalities of interstate commerce," or (iii) "activities that substantially affect interstate commerce." Gonzales v. Raich, 545 U.S. 1, 16-17 (2005). Congress may "regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." If a federal criminal statute prohibits a class of activities that "bears a substantial

---

[3]Koech argues the standard of review is *de novo* because the jury instruction denied him a defense. See United States v. Bruguier, 735 F.3d 754, 757 (8th Cir. 2013) (en banc). This contention is without merit. The challenged instruction did not omit this element of the offense, and Koech in fact argued his interstate commerce "defense" at closing.

relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." Id. at 17 (quotation omitted); see United States v. Lopez, 514 U.S. 549, 560 (1995); United States v. Mann, 701 F.3d 274, 294-295 (8th Cir. 2012), cert. denied, 571 U.S. 973 (2013).

In the Trafficking Victims Protection Act of 2000, which included 18 U.S.C. § 1591, Congress declared that human trafficking "substantially affects interstate and foreign commerce." § 102, codified at 22 U.S.C. § 7101(b)(12). "[W]hen Congress uses the language 'affecting interstate commerce,' as it did in [§ 1591(a)(1) of] the TVPA, Congress generally intends to regulate to the outer limits of its authority under the Commerce Clause." United States v. Walls, 784 F.3d 543, 546 (9th Cir.), cert. denied, 577 U.S. 894 (2015), citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001).

At trial, defense counsel proposed that the jury be instructed, "You must decide whether the defendant's conduct had an actual effect on interstate commerce, which can be minimal. However, the defendant's effect on interstate commerce must be actual, and not merely probable or potential." Instead, the court gave the following instruction regarding the interstate commerce element of Count 2, the substantive sex trafficking offense:

> Acts and transactions which are economic in nature and cross state lines are "in" interstate commerce. Transporting people across state lines for a commercial purpose is interstate commerce.

> Acts and transactions which are economic in nature and affect the flow of money in the stream of commerce to any degree, however minimal, "affect" interstate commerce. To show that the defendant's conduct affected interstate commerce, it is not necessary for the government to prove that the defendant specifically knew or intended that the recruiting, enticing, harboring, transporting, providing, obtaining, maintaining, patronizing, or soliciting of a person to engage

in commercial sex acts in which the defendant knowingly participated would affect interstate commerce; it is only necessary that the natural consequences of such conduct would be to affect interstate commerce in some way, even if minor.

> If you find beyond a reasonable doubt that the defendant's recruitment, enticement, harboring, transportation, providing, obtaining, maintaining, patronizing, or soliciting of [C.D.] for the purpose of engaging in commercial sex acts was "in or affecting interstate commerce," to any degree, however minimal, you may find the third element . . . has been satisfied. If you do not so find, then this element has not been established.

Koech argues this instruction allowed the jury to convict him based on the possible, rather than the actual, effects of his actions on interstate commerce. He argues that our decisions in United States v. Williams, 308 F.3d 833 (8th Cir. 2002), and United States v. Evans, 272 F.3d 1069 (8th Cir. 2001), cert. denied, 537 U.S. 857 (2002), establish that a jury instruction that relieves the government of proving an actual effect is "grave" error. (In Williams and Evans, we affirmed the convictions, concluding the instruction errors were harmless error or not plain error.)

We can agree with Koech that Congress's use of "affecting" in § 1591(a)(1), like the use of "affects" in the Hobbs Act, 18 U.S.C. § 1951(a), and in the money laundering statute, 18 U.S.C. § 1956(c)(4), "suggests that there must be evidence of an actual rather than potential effect on interstate commerce." Williams, 308 F.3d at 838 (18 U.S.C. § 1951(a)); see Evans, 272 F.3d at 1081. But there is no one formulation that must be used to reflect this concept. Rather, our deferential review of this issue is only to determine whether the district court abused its discretion by instructing the jury that the government need only prove a potential or hypothetical effect on interstate commerce.

We conclude the district court's above-quoted instruction satisfies this standard of review. It correctly stated that the government must prove Koech's conduct "affected" interstate commerce but need not prove Koech *knew* he was affecting interstate commerce. See Collier, 932 F.3d at 1075 & n.4 (joining other circuits in concluding that § 1591(a)(1) imposes no *mens rea* requirement on the interstate commerce element). The instruction did not include the specific statement the Fifth Circuit concluded would be error if taken out of context in United States v. Anderson, 560 F.3d 275, 278-79 (5th Cir. 2009): "It is not necessary for the Government to show . . . that commerce was actually affected." That was the specific statement we held was error in Williams, 308 F.3d at 837-38, and in Evans, 272 F.3d at 1081. Here, the instruction instead paraphrased the sentence in Anderson that gave the total instruction a proper context: "it is only necessary that the natural consequences of such conduct would be to affect interstate commerce in some way, even if minor." That sentence, which was quoted without criticism in Evans, accurately reflected a governing constitutional principle -- Congress may "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."

Second, Koech argues the government failed to present sufficient evidence that his actions were "in or affecting" interstate commerce because his involvement was limited to a single $60 transaction, the parties lived within walking distance of each other in Duluth, and there was no interstate travel involved in his alleged sex trafficking. This summary views the trial evidence most favorably to Koech. But we must review the sufficiency of the evidence "*de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that the support the verdict. Reversal is merited only where no reasonable jury could find all the crime's elements beyond a reasonable doubt." Paul, 885 F.3d at 1101-02 (cleaned up).

C.D. testified that Koech paid Mathis for her sex acts on two occasions, not one, and each time she and Mathis immediately took Koech's payment to buy drugs in Superior, Wisconsin. In addition, C.D. testified that Mathis advertised her on the internet, evidence of an interstate commerce nexus. See United States v. Brinson, 772 F.3d 1314, 1325-26 (10th Cir. 2014); United States v. Phea, 755 F.3d 255, 263 (5th Cir.), cert. denied, 574 U.S. 965 (2014). Koech asserts there was no evidence linking him to these Mathis activities, but the jury convicted Koech of conspiring with Mathis to violate § 1591(a)(1). It was entitled to view the evidence differently.

Of equal or greater significance, there was overwhelming evidence that Koech and Mathis communicated by text messages and phone calls using Koech's Chinese-made cell phone. When a statute punishes those who use an instrumentality of interstate commerce to commit the prohibited act, the use of telephones, "even when used intrastate," satisfies the interstate commerce element. United States v. Corum, 362 F.3d 489, 493 (8th Cir. 2004), cert. denied, 543 U.S. 1056 (2005); see United States v. Evans, 476 F.3d 1176, 1180-81 (11th Cir.), cert. denied, 552 U.S. 878 (2007). The commerce element in § 1591(a)(1) is conduct "in or affecting interstate commerce," not use of an instrumentality of interstate commerce. But even if that difference requires a greater showing of nexus between phone use and the prohibited economic activity, an issue we need not decide, the use of phones, text messages, and internet advertising is evidence of the requisite effect on interstate commerce in a § 1591(a) prosecution. See United States v. Baston, 818 F.3d 651, 664 (11th Cir. 2016), cert. denied, 137 S. Ct. 850 (2017); United States v. Willoughby, 742 F.3d 229, 240 (6th Cir. 2014) (use of Chinese-made cell phone was evidence of the interstate commerce element).

The district court instructed the jury, without objection:

In determining whether the defendant's conduct was "in or affecting interstate commerce," you may consider whether the defendant

used means or facilities of interstate commerce, such as telephones, the Internet or hotels that serviced interstate travelers, or whether the defendant's conduct substantially affected interstate commerce by virtue of the fact that the defendant purchased items that have moved in interstate commerce.

The government presented evidence that Koech used text messages and a Verizon cell phone manufactured in China to negotiate the price for obtaining C.D.'s commercial sex acts. Based on this and the extensive evidence of the conspirators' overall sex trafficking activities, we conclude the evidence was sufficient for a reasonable jury to reject Koech's attempt to frame his offenses as a "purely local transaction within the confines of Duluth," and to find that the government proved the jurisdictional element of the § 1591(a)(1) and § 1594(c) offenses beyond a reasonable doubt.

The judgment of the district court is affirmed.

_____