# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2323
_____

United States of America

*Plaintiff - Appellant*

v.

Muhammad Arif

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: April 15, 2025
Filed: October 2, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Muhammad Arif owns convenience stores in White County, Arkansas. He was charged with commercial sex trafficking of a minor, the fifteen-year-old daughter of his business handyman, in violation of 18 U.S.C. § 1591(a)(1).[1]   At trial, the

___

[1]The statute provides that "Whoever knowingly . . . in or affecting interstate or foreign commerce . . . recruits, entices . . . or solicits by any means . . . knowing [or]

government introduced evidence that twice in 2019, while driving the handyman's daughter, J.W., to her home, Arif solicited her to engage in sexual activity in exchange for payment. She repeatedly declined and recorded the conversations. At the close of the trial evidence, Arif timely moved for judgment of acquittal, arguing the government failed to prove commercial sex trafficking "in or affecting interstate or foreign commerce," an element of the § 1591 offense. The district court[2] took the motion under advisement and submitted the case to the jury, which returned a guilty verdict.

Arif then renewed his motion for judgment of acquittal. After considering post-trial briefing, the district court granted the motion, concluding that driving a car on a road, without more, is not evidence of "an actual rather than potential effect on interstate commerce," as our cases require. United States v. Koech, 992 F.3d 686, 692 (8th Cir.) (quotation omitted), cert. denied, 142 S. Ct. 371 (2021). The government appeals, arguing that committing a crime that affects interstate commerce, like commercial sex trafficking, satisfies the commerce element of § 1591(a)(1) even if the offense was committed without traveling across state lines, as in this case. "In reviewing a district court's grant of a motion for a judgment of acquittal, this court reviews the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Johnson, 639 F.3d 433, 437 (8th Cir. 2011). Reviewing this legal issue *de novo*, and giving the jury's verdict the deference it deserves, we affirm.

---

in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

[2]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

The handyman who serviced Arif's convenience stores struggled to provide for his family and often lacked access to the family's only vehicle. Arif often drove the handyman to and from different stores to complete jobs. P.W. returned to Arkansas in 2019 to be with her dad and enjoyed going along when Arif took him to job sites. The two occasions at issue occurred in Arif's vehicle as he drove P.W. home after sending her father to another site. On May 28, 2019, Arif offered P.W. $100 to perform sexual acts. She declined and began recording the conversation. Arif pressured P.W. to engage in sexual activity but she did not acquiesce. When they reached P.W.'s home, Arif gave her $20, telling her she could use the money to buy her boyfriend a gift and asking her to promise not to tell anyone about the conversation. Approximately one month later, Arif drove P.W. home and again solicited her to engage in sexual activity in exchange for payment. P.W. declined, again recording this conversation. P.W. reported the two incidents to her parents. In August 2019, P.W. and the parents reported the incidents to the local police.

Kensett Police Department Detective Mary Rudesill conducted a forensic interview with P.W. and later interviewed Arif, who acknowledged knowing the ages of P.W. and her two younger siblings. The criminal case began as a state prosecution for violation of the Arkansas human trafficking statute, Ark. Code Ann. § 5-18-103. The federal government took over, and the state proceedings were dismissed. On February 4, 2020, Arif was charged by indictment with violating 18 U.S.C. § 1591, part of the Trafficking Victims Protection Act of 2000 ("TVPA").

At trial, P.W. testified, the jury listened to her recordings, and Detective Rudesill testified as a government witness. Arif declined to testify; the defense called no witnesses. Rudesill testified that her investigation revealed Arif drove a black 2016 Nissan Murano SUV, manufactured in Canton, Mississippi. The government offered no evidence about how the money given P.W. was spent, that Arif's use of the vehicle manufactured in Mississippi otherwise affected interstate commerce, or that

J.W. was ever "trafficked" within the meaning of the TVPA legislative findings in 22 U.S.C. § 7101.

The sole issue on appeal is whether Arif's actions affected interstate commerce. The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3. For more than a century, Supreme Court decisions "have mechanically recited that the Commerce Clause permits congressional regulation of three categories: (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce; and (3) activities that 'substantially affect' interstate commerce." Gonzales v. Raich, 545 U.S. 1, 33-34 (2005) (Scalia, J., concurring in the judgment). The third category includes "purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." Id. at 17 (majority opinion) (quotation omitted). "[W]hen a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." Id. (quotation omitted).

Section 1591(a)(1) prohibits commercial sex trafficking "in or affecting interstate or foreign commerce." We confirmed in Koech "that Congress's use of 'affecting' in § 1591(a)(1) . . . 'suggests that there must be evidence of an actual rather than potential effect on interstate commerce.'" 992 F.3d at 692 (citation omitted). This is a constitutionally important inquiry. "When Congress criminalizes conduct already denounced as criminal by the States, it effects a 'change in the sensitive relation between federal and state criminal jurisdiction.'" United States v. Lopez, 514 U.S. 549, 561 n.3 (1995) (citation omitted). The task of the federal courts is to reject government contentions that would "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." Id. at 567. See Jones v. United States, 529 U.S. 848, 857 (2000) ("Were we to adopt the Government's expansive interpretation of § 844(i) [a federal arson statute], hardly a building in the land would fall outside the federal statute's domain.").

"These days . . . it does not take much for a criminal act to affect interstate commerce. Any actual impact, no matter how minor, will do." United States v. Harris, 83 F.4th 1093, 1096 (8th Cir. 2023) (cleaned up). In Harris, we affirmed a conviction under the federal identity-theft statute, 18 U.S.C. § 1028(c)(3)(A), concluding that defendant's use of the mail to send false quitclaim documents and his FaceTime and text messaging to communicate with an associate was sufficient impact on interstate commerce to establish that element of the offense. Id. at 1096. However, "[a]lthough a probability of affecting commerce is sufficient in some cases . . . the probability must be realistic rather than merely speculative." United States v. Quigley, 53 F.3d 909, 910 (8th Cir. 1995). In Quigley, we affirmed the judgment of acquittal for an alleged § 1951(a) robbery offense. The defendants offered a ride to two men who were walking to a liquor store to pick up beer they had ordered. En route to the store, the defendants beat and robbed the men and left them injured on the side of the road. Id. at 910. We concluded that the government's evidence "was insufficient as a matter of law to show commerce was affected within the statute's meaning" because the robbery "had no effect or realistic potential effect on interstate commerce." Id. at 909, 911. "The beer sale was completed over the telephone before the robbery . . . and there is no evidence [the victims] intended to purchase anything else at the store." Id. at 911.

By contrast, in Koech, we held the government met its burden to prove "an actual rather than potential effect on interstate commerce." 992 F.3d at 692. In that case, the defendant arranged sexual encounters through calls and text messages on a foreign-made phone to the minor victim's sex trafficker, who advertised the victim on Facebook. After the defendant paid the victim for sex in Duluth, Minnesota, the victim and the trafficker traveled across state lines to purchase drugs with the money in Superior, Wisconsin. Id. at 689-90, 693. We concluded the defendant's actions actually affected interstate commerce; this was not simply "a purely local transaction." Id. at 694. Here, the underlying facts are different, but the government needed to show a comparable actual effect on interstate commerce.

One complexity on appeal is that the government's actual effect theory has changed dramatically. In the district court, the government argued that, though the two solicitations occurred without crossing state lines, Arif drove P.W. from job sites to her home in a vehicle, and "paid" P.W. $20. As both federal currency and cars are recognized "instrumentalities of interstate commerce," the government argued, this evidence was sufficient to permit the jury to find the requisite effect on commerce:

> [W]e're not just arguing the currency, we're arguing the currency coupled with the vehicle. . . . Not standing alone, but both of them together. . . . In most sex trafficking cases use [of] the Internet is always going to satisfy that element. . . . In this case with a vehicle, that should satisfy the interstate commerce element.

The district court rejected this categorical contention in its May 24, 2024 decision. "No authority is cited," the court observed, "for the proposition that delivering legal tender, without more, satisfied § 1591's jurisdictional element. . . . [I]f simply giving money to someone qualifies as affecting interstate commerce, that . . . demonstrates that a federal police power exists, contrary to the Constitution's letter."

The vehicle was important "in what happened," the court noted, and "using an instrumentality, such as Arif using his vehicle, is evidence the jury could consider in deciding whether Arif's crime affected interstate commerce." But the government did not prove "that Arif's use of his vehicle had any effect, even a minor one, on interstate commerce. . . . His Mississippi-made vehicle was connected with interstate commerce, but his crime did not affect that stream. If the sex-trafficking statute's limiting word -- *affecting* interstate commerce -- is to carry any meaning, then the government's proof here falls short" (citations omitted). In conclusion, the court noted that the Arkansas statute, Ark. Code Ann. § 5-18-103, does not require proof of an effect on interstate commerce, and the state charge was voluntarily dismissed without prejudice after the federal charge was filed. "The government doesn't dispute

that this charge can be refiled and pursued as a matter of Arkansas law, which contains the great reserve of police power."[3]

Rather than allow the state charges to be refiled, the Department of Justice filed this appeal in mid-2024. On appeal, the government significantly expands its broad assertion of federal criminal jurisdiction over conduct within the core of the States' police power -- soliciting a minor for unwanted sex in a vehicle:

> Under the Commerce Clause, Congress has the ability to regulate the instrumentalities and channels of interstate commerce. . . . Arif used a vehicle and public roadways to solicit sex from a minor. His use of an instrumentality and channel of interstate commerce as the means to commit his offense places his conduct in commerce.

The government speculates, despite the total lack of evidence on the question, that a jury could reasonably infer that someone in P.W.'s situation, with her family struggling to make ends meet, would spend the $20 on goods or services.

Congress may prohibit conduct committed "through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce." That is the operative language of 18 U.S.C. § 844(e), which prohibits threats to injure or destroy persons or property by means of fire or explosives. In United States v. Corum, 362 F.3d 489, 493 (8th Cir. 2004), we held: "The plain language of . . . § 844(e) does not require proof of interstate commerce . . . beyond a showing that Corum used an 'instrument of interstate commerce,' namely a telephone, to make his threat." But § 1591(a) is textually different and, as always, our analysis begins and often ends with the plain meaning of the statutory text. "The commerce element in

---

[3]We note that Arif can still be prosecuted in Arkansas under the state's human trafficking statute *if* the state statute of limitations did not expire while the Department of Justice pursued this federal appeal.

§ 1591(a)(1) is conduct 'in or affecting interstate commerce,' not use of an instrumentality of interstate commerce." Koech, 992 F.3d at 693. Merely using the channels or instrumentalities of interstate commerce is relevant but does not necessarily demonstrate an actual effect on commerce that satisfies the jurisdictional element.

The government argues that, because a car is an "instrumentality" of commerce, proof of any use of a car in committing commercial sex trafficking of a minor is sufficient evidence of an actual impact, like the use of a telephone, the internet, or a computer. But as our analysis of the facts in Quigley demonstrates, merely driving a car on a road, without more, does not establish a sufficient interstate commerce nexus. The use of an instrumentality of commerce for a twenty-minute intrastate trip in this case is simply not the same as connecting to a multi-state cellular network or the internet, "a system that is inexorably intertwined with interstate commerce." United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007). Although the Mississippi-manufactured Nissan Murano was certainly linked to interstate commerce, the government's evidence failed to establish that Arif's use of the car in soliciting P.W. during two short intrastate drives to her home had an identifiable actual effect on intrastate commerce. This is unlike the observable effects of the defendant's use of instrumentalities in Koech (cell phone communications regarding sex trafficking and Facebook advertising of the victim) and Harris (use of the mail to send false documents and communications via texting and FaceTime). See generally United States v. Mann, 701 F.3d 274, 301-04 (8th Cir. 2012).

Turning to the second alleged instrumentality, the transfer of $20 of United States currency, the government on appeal again has no authority supporting its assertion that the Commerce Clause federalizes any criminal action in which money played any role. In the district court the government cited a district court decision from the Tenth Circuit, but that decision did not address the issue and was subsequently reversed. More to the point, the Tenth Circuit held in United States v.

Grey that the government failed to meet its burden of proving an effect on interstate commerce in a money-laundering prosecution where it "did not introduce a shred of evidence showing the origin or destination of the specific $200 in Federal Reserve Notes that constituted the single alleged money laundering transaction."  56 F.3d 1219, 1225 (10th Cir. 1995).  Here, the government offered no evidence of where the $20 came from or how P.W. spent it.  Its *de minimis* showing is in sharp contrast to the evidence in Koech that the victim and a sex trafficker immediately took trafficking payments across state lines to purchase drugs.

Finally, the government on appeal argues for the first time that any use of a roadway -- be it federal, state, local, or perhaps even private -- is sufficient evidence of an actual effect on interstate commerce because roadways are a recognized channel of interstate commerce.  Again, the government has no supporting judicial authority for this extraordinary categorical theory.  Nor did it introduce any evidence regarding the brief use of roadways at issue.  It simply asserts, "Common sense dictates that a twenty-minute drive from a business to a residence would be undertaken using roadways." The Supreme Court's extensive Commerce Clause jurisprudence requires far more evidence and detailed analysis.

The judgment of the district court is affirmed.

_____